UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-02990(ER)(BCM) |

## DECLARATION OF CHRISTINA COUGHLIN

Pursuant to 28 U.S.C. § 1746, I, Christina Coughlin, hereby declare as follows:

1.      I am a resident of the State of New York. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I have been employed by the New York State Education Department (NYSED) since February 2013. In 2023, I was appointed as the Chief Financial Officer/Deputy Commissioner. My office has been responsible for the fiscal aspects of the federal stimulus funding.

3.      The New York State Constitution requires the State to offer children "the opportunity of a sound basic education." *Aristy-Farer v. State of New York*, 29 N.Y.3d 501, 505 (2017) (quoting *Campaign for Fiscal Equity v. State of New York*, 86 N.Y.2d 307, 316 [1995]). To carry out this constitutional mandate, the Education Law vests NYSED with "the general management and supervision of all public schools and all of the educational work of the state."

Education Law § 101. The head of the department is the Board of Regents. *See id.*; *see also* N.Y. Const. art. V, § 4. The Board of Regents exercises legislative functions concerning the educational system of the state, determines its educational policies, and establishes rules for carrying into effect the laws and policies of the state relating to education. Education Law § 207. The Commissioner of Education, who is appointed by the Board, is responsible for "execut[ing] all educational policies determined upon by the board of regents." *Id.* § 305(1). The Commissioner is also responsible for "advis[ing] and guid[ing] the school officers of all districts and cities of the state in relation to their duties." *Id.* § 305(2).

4. The University of the State of New York, again headed by the Regents, consists of all secondary and higher educational institutions which are now or may hereafter be incorporated in the state and such libraries, museums, institutions, schools, organizations and agencies for education as may be admitted to or incorporated by the University. Education Law §214; NYS Const., Art. XI, §2.

5. In New York State, the Compulsory Education Law requires children ages 6 to 16 (or 17 if a board of education so elects) to attend "upon full time instruction." Education Law §3205(1), (3).

6. Minors "may attend at a public school or elsewhere." Education Law § 3204(1). But "[i]nstruction given to a minor elsewhere than at a public school," *e.g.*, at a nonpublic school, "shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides." *Id.* § 3204(2)(i). And the Compulsory Education Law sets forth certain minimum requirements for instruction which provisions apply to public and nonpublic schools alike. *See id.* § 3204(1). The purpose of

the Compulsory Education Law is to ensure that children are not left in ignorance and that they receive instruction that will prepare them for their place in society.

7.  In furtherance of these most important obligations, the State (through NYSED) has accepted federal education grants and funding.

8.  As pertinent here, since March 2020, New York State has been awarded over $14 billion in federal education COVID response funding through the Coronavirus Aid, Relief, and Economic Security (CARES) Act; Coronavirus Response and Relief Supplemental Appropriations Act, 2021 (CRRSA); and the American Rescue Plan (ARP) Act. These funds support the ability of local educational agencies (LEAs) and nonpublic schools to address the impact that COVID-19 has had, and continues to have, on elementary and secondary schools in New York State.

9.  As described further below, on March 28, 2025, the U.S. Department of Education (USDOE) unilaterally altered the deadline by which New York State had to liquidate these funds (hereinafter the March 28 recission), leaving the LEAs and nonpublic schools without the ability to sustain previously approved projects and putting the State and vendors at a deficit for unreimbursed funds.

## ESSER

10.  On March 11, 2021, Congress enacted the American Rescue Plan Act of 2021 (ARP). Under the ARP, New York State has been allocated $8,995,282,324 in Elementary and Secondary School Emergency Relief (ESSER) funds. These funds are focused on:

- Supporting the safe return to in-person instruction and continuity of services for students;
- Addressing the impact of lost instructional time through the implementation of evidence-based interventions, such as summer learning or summer enrichment, extended day, comprehensive afterschool programs, or extended school year programs;
- Ensuring that such interventions respond to students' academic, social, and emotional needs; and

- Addressing the disproportionate impact of the coronavirus on economically disadvantaged students, children with disabilities, English learners, racial and ethnic minorities, migrant students, students experiencing homelessness, and children and youth in foster care.

11. On August 5, 2021, USDOE announced the approval of New York's ARP-ESSER plan and awarded the funds to the state through a Grant Award Notification (GAN). In so approving, USDOE found that "New York's plan is consistent with all ARP ESSER statutory and regulatory requirements and addresses all of the ARP ESSER State plan elements."[1]

12. New York directed LEAs to use local data, and State assessment results when available, to determine how to use these grant funds to have the greatest impact on their communities. New York's online application platform allowed us to analyze how LEAs planned to strategically use the funds to address the disproportionate impact of the coronavirus on economically disadvantaged students, children with disabilities, English learners, racial and ethnic minorities, migrant students, students experiencing homelessness, and children and youth in foster care.

13. Among a very broad list of activities allowed under this funding source, these properly obligated funds were designated for activities such as:

- Any activity authorized by the ESEA, including the Native Hawaiian Education Act and the Alaska Native Educational Equity, Support, and Assistance Act (20 U.S.C. 6301 et seq.), which include:
    - High dosage tutoring programs;
    - Curriculum-aligned enrichment activities;
    - Comprehensive after-school programming;

---

[1] https://www.nysed.gov/news/2021/usde-approves-new-yorks-american-rescue-plan-elementary-and-secondary-school-emergency; https://www.nysed.gov/sites/default/files/programs/federal-education-covid-response-funding/nysed-arp-esser-plan-usde-approval-letter.pdf.

- - - Summer learning and enrichment activities;
    - Integrated social-emotional learning;
    - Direct services for preschool students
- Providing principals and other school leaders with the resources necessary to address the needs of their individual schools;
- Providing mental health services and supports, including through the implementation of evidence-based full-service community schools;
- Planning and implementing activities related to summer learning and enrichment and supplemental after-school programs, including providing classroom instruction or online learning during the summer months and addressing the needs of low-income students, students with disabilities, English learners, migrant students, students experiencing homelessness, and children and youth in foster care;
- Addressing the academic impact of lost instructional time among an LEA's students (including low-income students, students with disabilities, English learners, racial and ethnic minorities, students experiencing homelessness, and children and youth in foster care) by: a) Administering and using high-quality assessments that are valid and reliable to accurately assess students' academic progress and assist educators in meeting students' academic needs, including through differentiating instruction; b) Implementing evidence-based activities to meet the comprehensive needs of students; c) Providing information and assistance to parents and families on how they can effectively support students, including in a distance learning environment; and d) Tracking student attendance and improving student engagement in distance education; and
- School facility repairs and improvements to enable operation of schools to reduce risk of virus transmission and exposure to environmental health hazards and to support student health needs.

14.     The grant period to incur obligations under the award lasted through September 30, 2024 with the Tydings amendment waiver.[2] By letter dated January 13, 2025, USDOE extended

---

[2] The project period for LEAs was March 13, 2020 through September 30, 2024.

the expiration of the liquidation period by which reimbursement requests for these funds must be received to March 28, 2026 pursuant to guidance that it issued nine months earlier in January 2024. A copy of USDOE's January 13, 2025 letter granting the extension request is attached as Exhibit A.

## Implementation of ESSER Funds

15. Many programs operated by LEAs faced delays due to the unavailability of materials and labor after the pandemic. For example, additional time was necessary for multiple LEAs to complete HVAC renovation and upgrades due to backordered supply chains and the time required to contract with qualified vendors. Even as late as February 2024, Construction Dive, a construction industry newsletter noted that "HVAC equipment continues to have extended lead times..." and that labor shortages continued.

16. As LEAs incur eligible expenses under the award, they can request reimbursement from the State based on the amounts they have paid to date. After NYSED receives a payment request from a LEA, it reviews and processes the request for repayment. The State Comptroller repays the LEA with state funds in the first instance. The State then requests reimbursement from USDOE under the ESSER grants awarded. As described further below, the State issued payments to LEAs prior to the March 28, 2025 recission for which it has not yet received reimbursement from USDOE.

### HCY

17. One component of ARP funding was devoted to supporting Homeless Children and Youth (HCY). New York State was allocated $58,910,436.

18. These funds were awarded from USDOE via a Grant Award Notification (GAN) dated July 21, 2021. The grant period to incur obligations under the award lasted through September 30, 2024 with the Tydings amendment waiver.[3]

19. Among a very broad list of allowable activities permitted under this funding source, these properly obligated funds can be used for activities that include any expenses necessary to facilitate the identification, enrollment, retention, and educational success of homeless children and youth, such as:

- Providing wraparound services (which could be provided in collaboration with and/or through contracts with community-based organizations and could include academic supports, trauma-informed care, social-emotional support, and mental health services);
- Purchasing needed supplies (e.g., PPE, eyeglasses, school supplies, personal care items);
- Providing transportation to enable children and youth to attend classes and participate fully in school activities;
- Purchasing cell phones or other technological devices for unaccompanied youth to enable the youth to attend and fully participate in school activities;
- Providing access to reliable, high-speed internet for students through the purchase of internet-connected devices/equipment, mobile hotspots, wireless service plans, or installation of Community Wi-Fi Hotspots (e.g., at homeless shelters), especially in underserved communities;
- Paying for short-term, temporary housing (e.g., a few days in a motel) when such emergency housing is the only reasonable option for COVID-safe temporary housing and when necessary to enable the homeless child or youth to attend school and participate fully in school activities (including summer school); and
- Providing store cards/prepaid debit cards to purchase materials necessary for students to participate in school activities.

---

[3] See footnote 2.

20. By letter dated January 7, 2025, USDOE extended the expiration of the liquidation period by which reimbursement requests for these funds must be received to March 28, 2026 pursuant to guidance that it issued nine months earlier in January 2024. A copy of USDOE's January 7, 2025 letter granting the extension request is attached as Exhibit B.

## Implementation of HCY Funds

21. Like the process in ESSER, as LEAs incur eligible expenses under the HCY award, they can request reimbursement from the State based on the amounts they have paid to date. After NYSED receives payment requests from a LEA, it is reviewed and processed for repayment. The State Comptroller repays the LEA with State funds and then the State requests reimbursement from USDOE.

22. As described further below, the State issued payments to LEAs prior to the March 28, 2025 recission for which it has not yet received reimbursement from USDOE.

## EANS

23. The final component of ARP funding was Emergency Assistance to Nonpublic Schools (EANS). New York State received an ARP EANS allocation of $252,458,198 that was made available to eligible religious and independent schools.[4]

24. Similar to the administration of EANS funds included in the CRRSA of 2021, EANS funds awarded under the ARP were directly administered by NYSED.

25. These funds were awarded from USDOE via a Grant Award Notification (GAN) dated October 19, 2021. The grant period to incur obligations under the award lasted through September 30, 2024 with the Tydings amendment waiver.

---

[4] New York's "nonpublic schools" have informed us that they prefer to be referred to as "religious and independent schools," which is used herein to refer to the "nonpublic schools" referred to in the statute.

26. By letter dated September 24, 2024, USDOE extended the expiration of the liquidation period by which reimbursement requests for these funds must be received to March 28, 2026 pursuant to guidance that it issued nine months earlier in January 2024. A copy of USDOE's September 24, 2024 letter granting the extension request is attached as Exhibit C.

27. Projects subject to this extension included work intended to address learning loss or gaps related to the pandemic, improve the social emotional health of students, efforts to improve ventilation or allow social distancing in schools, and efforts to allow remote learning by improving network infrastructure. These categories of services were approved by Congress.

## Implementation of EANS Funds

28. The ARP EANS funding required state education agencies like NYSED to engage directly with vendors to implement the program on behalf of our religious and independent schools. This required New York to engage in a proper procurement process to recruit vendors at the best available prices, consistent with state guidelines, to serve the educational and social-emotional needs of our religious and independent school students as well as engage with construction vendors to complete ventilation improvement projects. NYSED issued Requests For Proposals (RFPs) to identify contractors to carry out the work required under EANS.

29. Under New York's procurement rules, the RFP process generally takes several months (to write RFPs/scope of work, receive and review vendors' proposals, prepare contracts, etc.). Further, since NYSED had no experience procuring ventilation improvement services of this scale and scope, we had to engage a third-party construction manager to streamline the administration of the program and ensure that various contractors selected regionally were managed by an entity with appropriate experience. The intent was to protect our schools from incomplete or low-quality projects that would leave their buildings in poor condition. This

approach was successful until USDOE's March 28 recission caused work to stop in multiple buildings, in some cases leaving windows unsealed or ventilation equipment not installed.

30. The timelines required by the EANS statute posed significant challenges at our agency, but our staff undertook this work conscientiously and overcame the many obstacles we faced to serve these schools.

31. New York's implementation model required the firms with which we contracted to provide the services in the first instance and then request payment from the State. Numerous New York businesses engaged in this program, and eventually, the programs operated at full capacity.

32. After issuing payments to the vendors, New York requests reimbursement from USDOE under the EANS grant. As described further below, the State has paid vendors prior to the March 28 recission for which it has not yet received reimbursement from USDOE.

## Administrative Portion of the Grants

33. State administrative funds allowed under these awards are for general or centralized expenses of the overall administration of an organization and do not include program costs. NYSED entered into a contract obligating the majority of the remaining administrative funds to support the modernization of our grants finance management system. The modernization effort was necessary to address the difficulties we encountered awarding and disbursing nearly $15 billion in Education Stabilization Fund (ESF) funding during the pandemic, which included the ESSER, HCY, and EANS funds that are at issue here.

34. In addition, NYSED used a portion of the administrative funding to support the salaries of staff engaged in initiatives to assist our LEAs in their planning for the transition away from the ESF funds at the end of the grant period and to provide technical assistance on various aspects of the programs.

35. NYSED currently has 19 employees funded with ESF grants. These staff are engaged with each of the ESF programs impacted by the March 28 recission. Specifically, staff administer the EANS program by communicating with the eligible nonpublic schools and working with the vendors to ensure services are being provided as allowed under the program; processing the reimbursement payment requests from LEAs and coordinating with program staff to resolve incomplete submissions; and monitoring LEAs to ensure they fulfill their obligations to address pandemic-related needs.

### Extensions of the Liquidation Period

36. As a result of the difficulties encountered in administering the ESF funding programs described above, New York State requested extensions of the liquidation periods for the above COVID funds to complete the remainder of the approved work. Copies of New York's extension requests are attached as Exhibit D.

37. In requesting the extensions, USDOE required New York to provide detailed information about how the money would be used and the reason for an extension. The State provided detailed breakdowns of remaining allocations by LEAs and vendors and further narratives relating to any causes for delays, such as backorders and labor shortages.

38. As noted above, USDOE granted the requests and extended the liquidation period for each award through March 28, 2026. When USDOE granted the extension requests, New York had $363,198,981 remaining in unliquidated grants, a small fraction of the overall amount originally awarded.

39. After receiving the extensions, New York, its vendors, and its LEAs continued to complete the approved projects as permitted by USDOE in order to spend down the $363,198,981 in remaining funds – until USDOE changed its position on March 28, 2025, as discussed below.

**USDOE's Changed Position and the Resultant Harm**

40. On March 28, 2025 at 5:03 p.m., Adam Honeysett, an employee in USDOE's Office of Communications and Outreach, emailed NYSED to inform the agency by attached letter from Education Secretary McMahon (also dated March 28, 2025) that USDOE was rescinding its previously granted liquidation period extensions for ESSER, HCY, and EANS funding and considered NYSED's liquidation periods for this funding to have already expired as of 5:00 p.m. on March 28, 2025—*i.e.*, three minutes before the email was sent. A copy of Mr. Honeysett's email and the accompanying letter from Secretary McMahon are attached as Exhibits E and F, respectively.

41. The legality of this abrupt change in USDOE's position is the subject of the underlying complaint, and it has reverberating effects across the State. I received dozens of phone calls and emails from school district officials, contractors, and religious officials affected by the sudden reversal. They were understandably confused and panicked by USDOE's sudden, unexplained rescission of the prior extension approvals and determination that the liquidation periods have already expired. These entities, as well as the State and the students it serves, have been profoundly affected by the March 28 recission, as detailed below.

Unreimbursed Expenses Have Caused Sudden Budget Shortfalls

42. At the time of the March 28 recission, $134,219,838 of congressionally appropriated ARP funds that had been awarded to the State of New York remained to be liquidated. This includes $124,603,131 of programmatic funds and $9,616,707 in administrative funds to support the State Education Department's review of claims and other necessary agency work, described above.

43. New York's LEAs, vendors, and religious and independent schools relied upon the prior extension approvals granted by the USDOE permitting New York to liquidate awarded funds through March 28, 2026 to complete qualifying work. For example, numerous LEAs and religious and independent schools began work on eligible construction projects supported by these funds. Due to post-pandemic supply chain issues, these projects were heavily represented in the pool of LEAs with remaining allocations. Many of the schools, both LEAs and religious and independent schools, have engaged in this work already, incurring costs with the belief and understanding that the liquidation periods had been extended by USDOE through March 28, 2026 and that requests for reimbursement submitted within that timeframe would be honored and treated as timely payment requests. This was reasonable, insofar as the federal government has historically been a reliable guarantor.

44. New York has paid $11,571,870.86 to LEAs and related administrative costs for the ESSER and HCY programs prior to 5:00 pm on March 28, 2025 and has not been reimbursed by USDOE.

45. New York has paid $15,057,542.29 to vendors providing services to nonpublic schools and related administrative costs for the EANS program prior to 5:00 pm on March 28, 2025 that has not been reimbursed by USDOE.

46. Due to the amount of funding that remained unliquidated as of USDOE's change in position on March 28, 2025, New York does not have the financial capacity under its education budget to make up the enormous shortfall resulting from the inability to liquidate awarded funds.

### Incomplete Construction Projects

47. In some cases, religious and independent schools have contributed their own resources to extend the scope of the project, which was directly contemplated by USDOE guidance. For example, USDOE guidance indicated that religious and independent schools could not use EANS funds to *purchase* heating, ventilation, or air conditioning (HVAC) systems or windows. The funds could, however, be used for the *installation* of HVAC systems or windows. Thus, several religious and independent schools purchased HVAC system or windows themselves, prepared their facilities for the installation by removing existing equipment, and waited for vendors to provide installation services. NYSED records reveal forty-three ventilation improvement projects in the "in-construction" status as of March 28, 2025. As a result of the March 28 recission, the projects are at a standstill and may never be completed.

48. For example, one independent school that serves students with disabilities undertook a project to add air conditioning to their gymnasium to combat the issue of having to close the gym when it reached over 80 degrees to prevent medical harm to students, such as seizures. This project was underway when USDOE issued the March 28 recission, leaving the school with large holes in the walls that were ready to be connected to duct work.

49. LEAs are also financially exposed due to the March 28 recission. One school district has incurred nearly $25 million in approved construction costs, which cannot be timely liquidated if USDOE is allowed to renege on its prior extension approvals and treat the liquidation period to have already expired. Other districts face similar challenges – and will be legally obligated to pay vendors for work thus performed without access to the necessary funds from the ARP awards – since they were in the middle of projects for fully obligated and approved work in March 2025.

### Cessation of Student Services

50. EANS educational service vendors have also been placed at risk due to the March 28 recission. These vendors had been actively providing services through March 28, 2025, such as tutoring, special education resources, and professional development services, to address learning loss related to the pandemic with a plan to continue those services through the 2024-25 school year. Invoices for previous months of work were in various stages of the review process and/or had not been submitted yet. The March 28 recission means that these vendors cannot be paid from EANS funds at all. This has put our vendors at serious risk of being unable to support their business if payment cannot be issued because the previously extended liquidation period is now considered by USDOE to have expired as of 5:00 pm on March 28, 2025 – a full year earlier than USDOE had approved.

51. Over $20 million of planned educational and social-emotional support services intended to be delivered between April-June 2025 are currently suspended from continuation as a result of USDOE's change in position that New York's liquidation periods have already expired. Because the vendors cannot anticipate payment due to USDOE's change in position, they have ceased their work with schools. Thus, students, including a significant number of disadvantaged and/or special education students, are unexpectedly without much needed support with no idea whether those services will return.

52. The Albany Times Union profiled two of these families in an article by Kathleen Moore published on April 4, 2025, attached hereto as Exhibit G. The parents profiled in the article expressed deep concern at the prospect of the immediate loss in services. One parent said, in response to the cancellation of a tutor for her first grader, that she "had a mental breakdown" and "was heartbroken." Another parent indicated that tutoring for her second

grader "was what [she] was praying for — and it just shattered." Her second grader indicated that he "want[ed] it to stay" because his tutors were "very nice" and "help [him] a lot with reading and math." These are concrete examples of the harm caused by USDOE's callous reversal.

53.     Participating religious and independent schools do not have adequate budgets to incur the costs of those services independently, and New York does not have the funds in its education budget to provide reimbursement to these schools for these costs. As a result, most of the hundreds of staff working on these programs have been terminated or furloughed.

54.     Without an update or confirmation that services will resume soon, our largest educational service provider under EANS – who provides, among other things, tutoring services – plans to terminate all employees that they currently have furloughed. If USDOE is not immediately required to withdraw the March 28 rescission, there will not be enough time to hire new staff and get the programs back up and running for the remainder of the 2024-25 academic year. This will result in severe harm to students, including lost instruction time and further lost opportunities to address learning losses and gaps that were the result of the pandemic – problems the ARP funding was specifically targeted to alleviate.

### Loss of Staffing

55.     If the March 28 recission is not blocked and the March 28, 2026 liquidation deadline not immediately restored, then NYSED will also be forced to lay off 19 staff members who have been supporting ASF funded programs. Without the promised federal funding, NYSED will not be able to support the costs of these staff for any length of time.

56.     These staff have been carefully trained in and gained experience in the appropriate review and monitoring of taxpayer-funded projects. This monitoring is part of the

agreement that the State made when it accepted the funds, and we intended to fulfill this obligation – but will not be able to if the funds are not continued.

57. Should the program be restored after a lengthy break, there is no guarantee NYSED would be able to quickly refill these positions with well-prepared individuals. Whenever these positions are refilled, NYSED will need to expend resources to train the new hires on how to administer these complicated ESF funding programs.

Increased Liability

58. The State faces potential liability up to the amount of unliquidated funds that remained pending as of the March 28 recission. The State reasonably committed under contracts with multiple vendors to expend these funds after being granted the extensions to liquidate.

59. For example, due to the recission of funding, NYSED is exposed to liability of approximately $42.3 million dollars to education services providers who provided services prior to March 28, 2025. The number increases by an additional $5,478,843.62 when considering the completed ventilation improvement services provided prior to March.

60. These numbers do not take into account the amount for services each school will require in order to complete projects that began with EANS funding. Currently, there is approximately $2,965,230.64 of outstanding ventilation improvement work left to be completed. This work is not optional, as affected schools are left with exposed portions of buildings and heavy machine equipment parked on their campuses, putting the health and safety of hundreds of students and teachers at risk.

61. Allowing USDOE to arbitrarily rescind its prior extension approvals based on its newfound position that "the COVID pandemic [has] ended" will cause irreparable harm to students receiving educational services, religious and independent schools who may be forced

to close, vendors forced to lay off staff, local school districts left with budgetary gaps that cannot be filled with current funds or with contribution from New York, and the State itself, which has been left with gaping budget deficits and potential liabilities.

Executed on April 11, 2025, at Albany, New York.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Christina Coughlin