UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, *et al.,*

                Plaintiffs,

    - against –

UNITED STATES DEPARTMENT OF
EDUCATION*, et al.,*

                Defendants.

**No. 25 Civ. 2290 (ER)**

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel:    (212) 637-2761/2741
*Attorney for Defendants*

CHRISTOPHER K. CONNOLLY
DANA WALSH KUMAR
*Assistant United States Attorneys*
   – Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................2

    I.     The Education Stabilization Fund.........................................................................2

    II.    The March 28 and April 3 Letters..........................................................................5

    III.   Plaintiffs' Complaint and Motion for a Preliminary Injunction ...................................6

STANDARD OF REVIEW ....................................................................................................7

ARGUMENT .......................................................................................................................8

    I.     Plaintiffs Do Not Demonstrate a Likelihood of Success on the Merits .......................8

        A.  The March 28 Letter Does Not Constitute Final Agency Action ...........................8

        B.  The Department's Actions Are Neither Arbitrary and Capricious Nor
            Contrary to Law ...................................................................................12

    II.    Plaintiffs Have Not Shown Irreparable Harm............................................................15

    III.   A Preliminary Injunction Would Not Serve the Public Interest ..................................16

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>**Cases**</u>

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967) ........................................................................................ 10, 11

*A.H. by & through Hester v. French*,
  985 F.3d 165 (2d Cir. 2021) .................................................................................. 8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................................ 9, 10

*Bionpharma Inc. v. CoreRx, Inc.*,
  582 F. Supp. 3d 167 (S.D.N.Y. 2022) .................................................................. 17

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*,
  934 F.2d 30 (2d Cir. 1991) .................................................................................. 16

*Broecker v. New York City Dep't of Educ.*,
  573 F. Supp. 3d 878 (E.D.N.Y. 2021) .................................................................. 16

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ............................................................................................ 12

*Dalton v. Specter*,
  511 U.S. 462 (1994) .............................................................................................. 9

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ............................................................................................ 10

*Davis v. Pension Ben. Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) .......................................................................... 17

*Dep't of Education v. California*,
  145 S. Ct. 966 (2025) ......................................................................................... 16

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009) ............................................................................... 15

*Food & Drug Admin. v. Wages and White Lion Investments, L.L.C.*,
  145 S. Ct. 898 (2025) ......................................................................................... 13

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005) ............................................................................... 15

*FTC v. Standard Oil Co. of California*,
    449 U.S. 232 (1980) ............................................................................................ 9, 10

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
    460 F.3d 13 (D.C. Cir. 2006) ................................................................................... 8

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) ................................................................................. 7, 16

*Kakar v. USCIS*,
    29 F.4th 129 (2d Cir. 2022) .................................................................................. 12

*Marchi v. Bd. of Coop. Educ. Servs.*,
    173 F.3d 469 (2d Cir. 1999) .................................................................................. 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................................ 12

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) .................................................................................. 11

*Natural Resources Defense Council v. EPA*,
    658 F.3d 200 (2d Cir. 2011) .................................................................................. 12

*Nevada v. Dep't of Energy*,
    457 F.3d 78 (D.C. Cir. 2006) ................................................................................ 11

*New York v. U.S. Dep't of Homeland Security*,
    969 F.3d 42 (2d Cir. 2020) .................................................................................... 15

*Nken v. Holder*,
    556 U.S. 418 (2009) .............................................................................................. 16

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998) .............................................................................................. 11

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) .................................................................................. 15

*Sampson v. Murray*,
    415 U.S. 61 (1974) ........................................................................................... 15, 16

*Seafarers Int'l Union of N. Am., AFL-CIO v. U.S. Coast Guard*,
    736 F.2d 19 (2d Cir. 1984) .................................................................................... 11

*Simmonds v. I.N.S.*,
  326 F.3d 351 (2d Cir. 2003) .................................................................... 11

*Students for Fair Admissions v. U.S. Military Academy at West Point*,
  709 F. Supp. 3d 118 (S.D.N.Y. 2024) ........................................................ 7

*U.S. Army Corps of Engineers v. Hawkes Co., Inc.*,
  578 U.S. 590 (2016) ........................................................................... 9, 10

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................... 7

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) .................................................................... 8

## Regulations

2 C.F.R. § 200.342 ..................................................................................... 6

2 C.F.R. § 200.344(c) ....................................................................... 4, 13, 14

34 C.F.R. Part 76 ...................................................................................... 3

34 C.F.R. § 76.707 .................................................................................... 4

## Rules

Fed. R. Civ. P. 65(c) ................................................................................ 18

## Statutes

5 U.S.C. § 704 ......................................................................................... 9

5 U.S.C. § 706(2)(A) ............................................................................... 12

20 U.S.C. § 1226a ............................................................................... 3, 14

Pub. L. No. 116-136 (2020) ....................................................................... 2

Pub. L. No. 116-260 (2020) .................................................................... 2, 3

Pub. L. No. 117-2 (2021) ................................................................... 2, 3, 17

Defendants the United States Department of Education ("ED" or the "Department") and Linda McMahon, in her official capacity as Secretary of Education (together, "Defendants"), by their attorney Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the motion for a preliminary injunction (ECF No. 10) filed by the Plaintiff States ("Plaintiffs" or the "States").

## PRELIMINARY STATEMENT

At the height of the COVID-19 pandemic, Congress enacted statutes and appropriated hundreds of billions of dollars to assist school districts in mitigating the effects of the pandemic and potential learning losses caused by the public health emergency. The Education Stabilization Fund ("ESF") consisted of more than $276 billion awarded to state and institutional COVID-19 recovery and rebuilding efforts. Pursuant to the statutes and regulations governing the use of those funds, states generally had until September 30, 2024, to obligate the use of the funds, and until January 28, 2025, to access funds to liquidate those obligations. States were permitted to seek extensions of the liquidation period from the Department, which possesses the authority to grant such extensions in its discretion. As alleged in the complaint (ECF No. 1) ("Compl."), the Plaintiff States generally submitted extension requests that were granted in or around January 2025.

On March 28, 2025, Secretary McMahon issued a letter (the "March 28 Letter") informing the states that previous extensions were no longer in effect, but that the Department would consider applications to extend the liquidation period for individual projects. On April 3, 2025, the Department issued another letter (the "April 3 Letter") in which it identified the information that states would need to provide in order to seek an extension of the liquidation period.

The Plaintiff States now challenge the Department's recission of its prior extensions. But neither their complaint nor their brief in support of preliminary injunctive relief (ECF No. 11)

("Pls.' Br.") addresses the March 28 and April 3 letters' language concerning a procedure for seeking project-specific extensions of the liquidation period.  Because there is a revised procedure in place, the March 28 Letter's recission of the prior extensions does not constitute final agency action and this lawsuit is not ripe.  Moreover, the Department's actions are not arbitrary, capricious, or contrary to law because recission of the prior extension was within the Department's discretion and did not conflict with the relevant appropriations statutes.  For those reasons, the States cannot show that they are likely to succeed on the merits of this case.  Moreover, the States cannot show they will suffer irreparable harm to the extent they have not sought to obtain extensions under the revised process.  Finally, the balance of equities and public interest tip in Defendants' favor because the Department has a compelling interest in ensuring that funds appropriated by Congress are utilized for their intended purpose of mitigating the effects of the COVID-19 pandemic on students' education.

Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

## BACKGROUND

### I.    The Education Stabilization Fund

In the midst of the COVID-19 pandemic and ensuing public health emergency, Congress enacted several statutes that appropriated funds to respond to the crisis.  Three of those statutes were the Coronavirus Aid, Relief, and Economic Security Act ("CARES"), Pub. L. No. 116-136 (2020), 134 Stat. 281, the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSA"), Pub. L. No. 116-260 (2020), 134 Stat. 1182, and the American Rescue Plan of 2021 ("ARP"), Pub. L. No. 117-2, 135 Stat. 4 (2021).  These statutes provided funding to support schools and students experiencing challenges stemming from the COVID-19 pandemic, and, among other things, provided funding to support the "safe return to in-person instruction," and to

account for "learning loss" from the pandemic. *See, e.g.*, Pub. L. 117-2, 135 Stat. 4 (2021). Together, these statutes established the Education Stabilization Fund ("ESF"), which is composed of "relief funds that support State and institutional efforts to prevent, prepare for, and respond to the coronavirus impacts" on students. U.S. Department of Education, Education Stabilization Fund, https://covid-relief-data.ed.gov/.

These statutes established three ESF programs that are relevant here: (i) the Elementary and Secondary School Emergency Relief ("ESSER") program; (ii) the Homeless Children and Youth ("HCY") program; and (iii) the Emergency Assistance to Non-Public Schools ("EANS") program. *See* https://www.congress.gov/crs-product/R48186. The Department was tasked with administering these funds to state educational agencies ("SEAs") for the purpose of providing local education agencies ("LEAs") with the emergency relief. *See* 34 C.F.R. Part 76. The Department's Office of Elementary and Secondary Education ("OESE") is the division charged with administrating the funds. Pursuant to ARP § 2001(a), approximately $122 billion was to remain available to SEAs and LEAs through September 30, 2023, to achieve the goals of the statute and provide funding for American students. Pub. L. 117-2, March 11, 2021, 135 Stat 4. This means that SEAs had until September 30, 2023, to obligate any funds pursuant to the statutes. Under the General Education Provisions Act ("GEPA"), however, the authorization of appropriations was "automatically extended for one additional fiscal year," 20 U.S.C. § 1226a, and thus recipients of the ESSER, HCY, and EANS funds appropriated through the ARP had until September 30, 2024, to obligate those funds.[1]

---

[1] After applying the one-year GEPA extension, the deadline to obligate grant funds appropriated under CRRSA, which make up only a small percentage of the funds at issue here, was September 30, 2023. Pub. L. 116-260, 134 Stat. 1182.

The September 30, 2024, deadline was for SEAs to obligate the funds, but they were not required to liquidate or draw down funds for all projects by that date; pursuant to applicable regulations, the recipients of these funds have 120 calendar days "after the conclusion of the period of performance" to liquidate all financial obligations incurred.  2 C.F.R. § 200.344(c).  As the Plaintiff States acknowledge, they were therefore required to incur obligations eligible for funding under these programs by September 30, 2024, and the states had until January 28, 2025, to liquidate their ARP funds obligated prior to September 30, 2024.  Pls.' Br. 8.

The Department, "[w]hen justified," "may approve extensions for the recipient or subrecipient" of grant funds.  2 C.F.R. § 200.344(c).  In January 2024, the Department issued guidance stating that "upon request from a grantee," a grantee might be "approved for up to an additional 14 months beyond" the end of the 120-day liquidation period, "provided a timely and valid obligation had been made pursuant to 34 C.F.R. § 76.707."  U.S. Dep't of Education, General and Technical Frequently Asked Questions (FAQs) for CARES ESSER, CARES GEER, CRRSA ESSER, CRRSA GEER, CRRSA EANS, ARP ESSER, and ARP EANS Liquidation Extension Requests, at 1, *available at* https://www.ed.gov/sites/ed/files/2024/01/Updated-Technical-FAQs-for-Liquidation-Extensions-1.9.24-v-2-for-posting.pdf.  If a state sought an extension, and if the extension was approved by the Department, the state would have "additional time to draw down COVID-relief funds so timely obligated activities can be paid."  *Id.*  According to the complaint, prior to March 28, 2025, the Plaintiff States received extensions to liquidate EANS, ESSER, and/or HCY funds, which, in most instances relevant here, extended the applicable liquidation period to March 28, 2026.  Compl. ¶¶ 87-157.[2]  The States allege that they "were relying on the extension

---

[2] Plaintiffs indicate that, for California's EANS award, the liquidation period was extended through December 2025.  Pls.' Br. 9 n. 8.

approvals permitting Plaintiffs to draw upon the ES funding through the expiration of the extended liquidation period in executing agreed-upon plans to deliver services to students and engage in building projects aimed at combating the long-term effects of the pandemic." *Id.* ¶ 158.

## II.    The March 28 and April 3 Letters

On March 28, 2025, Secretary McMahon issued a letter to all state recipients of ES funding, including Plaintiffs, advising them that the Department had modified the time period to liquidate all obligations under the ESF, including all programs funded by the CRRSA and ARP.  March 28 Ltr. (ECF No. 1-1).  In the March 28 Letter, Secretary McMahon indicated that the Department had modified the liquidation period to end on March 28, 2025, the date of the letter, rather than the previously extended deadline of March 28, 2026.  *Id.*  The letter explained that states "were entitled to the full award only if [they] liquidated all financial obligations within 120 days of the end of the period of performance," and that the "period to liquidate obligations for these Grant Awards [had] expired."  *Id.*  Secretary McMahon further noted that, because the COVID pandemic had ended, extending the deadlines for COVID-related grants "is not consistent with the Department's priorities and thus not a worthwhile exercise of its discretion" to extend liquidation deadlines.  *Id.*  But the letter also stated that "even though the COVID pandemic and the liquidation period under the applicable regulations [had] ended, the Department will consider an extension to [a state's] liquidation period on an individual project-specific basis."  *Id.*  According to the letter, to obtain an extension, the recipient was required to "submit a statement to the email address listed below explaining (1) how a particular project's extension is necessary to mitigate the effects of COVID on American students' education, and (2) why the Department should exercise its discretion to grant [the] request."  *Id.*

On April 3, 2025, Hayley B. Sanon, the Principal Deputy Assistant Secretary and Acting Assistant Secretary in OESE, issued a "Dear Colleague Letter" also stating that "even though the COVID pandemic and the liquidation period under the applicable regulations [had] ended, the Department will consider an extension to [a state's] liquidation period on an individual project-specific basis." Apr. 3 Ltr., *available at* https://www.ed.gov/media/document/dear-colleague-letter-follow-esf-funding-april-3-2025-109779.pdf. The April 3 Letter identified information that states needed to submit in order to apply for project-specific extensions of the liquidation deadline and stated that the Department would "review each request as it is received and work to provide a response as quickly as possible." *Id.* The Department has since indicated that a "State agency whose project-specific request is denied may request an appeal of these decisions consistent with 2 C.F.R. § 200.342" within "30 calendar days from the receipt of a denial." U.S. Dep't of Education, Education Stabilization Fund Liquidation Extension, *available at* https://www.ed.gov/grants-and-programs/formula-grants/response-formula-grants/covid-19-emergency-relief-grants/education-stabilization-fund-liquidation-extensions ("ESF Liquidation Extensions Website"). According to the Department's website, as of April 23, 2025, 29 states and outlying areas have submitted over 150 project-specific extension requests. *Id.* Among the States that have submitted requests are Plaintiffs Arizona, California, Maryland, and Nevada. *Id.*

### III.    Plaintiffs' Complaint and Motion for a Preliminary Injunction

The Plaintiff States commenced this action on April 10, 2025, challenging the March 28 Letter's recission of the prior extension for liquidating ES grant funds as both "arbitrary and capricious" and "contrary to law" under the APA. *See* Compl. ¶¶ 192-215. The States allege that they have received ES funding grants and also received extensions of the liquidation deadline in connection with those grants. *See id.* ¶¶ 47-157. They further allege that recission of the prior

extensions "is already having and will continue to have devastating effects" on state and local programs designed to address the impact of the COVID-19 pandemic. *See id.* ¶¶ 162-91. The complaint does not address the March 28 Letter's language concerning an application process for project-specific extensions, nor does it reference the April 3 Letter.

Plaintiffs moved for a preliminary injunction on April 11, 2025. In their brief, they allege that the March 28 Letter has "blocked [them] from submitting payment requests to access the remaining unliquidated programmatic portions of their ES funding." Pls.' Br. 11. The States also claim that because of the March 28 Letter's recission of the prior extension, SEAs and LEAs "have already had—or anticipat[e] having in the near future—to terminate contracts with vendors and other partners . . . that were being paid exclusively with programmatic ES funding." *Id.* Like the complaint, Plaintiffs' brief does not address the process for seeking individual extensions of the liquidations period set forth in the March 28 and April 3 letters. Nonetheless, Plaintiffs assert that they are entitled to preliminary injunctive relief because they are likely to succeed on the merits of their claims that the Department's actions violate the APA, *see id.* 19-25, they will suffer irreparable harm absent an injunction, *see id.* 25-27, and the public interest and equities favor granting their motion, *see id.* 27-28.

## STANDARD OF REVIEW

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Military Academy at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To demonstrate its entitlement

to this "extraordinary and drastic remedy," *id.*, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, [] (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor," *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quotation marks and footnotes omitted).  Where, as here, a movant seeks "to modify the status quo by virtue of a 'mandatory preliminary injunction' (as opposed to seeking a 'prohibitory preliminary injunction' to maintain the status quo)," the "standard for obtaining preliminary injunctive relief is higher." *A.H.*, 985 F.3d at 176 (quoting *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020)).  "In this circumstance, the movant must . . . make a *strong* showing of irreparable harm and demonstrate a *clear or substantial* likelihood of success on the merits."  *Id.* (emphasis added; quotation marks omitted).

## ARGUMENT

Plaintiffs are not entitled to injunctive relief because they do not make a clear showing that they are likely to succeed on the merits of their APA claims, that they will be harmed irreparably absent an injunction, or that the balance of equities and the public interest weigh in their favor.

### I.  Plaintiffs Do Not Demonstrate a Likelihood of Success on the Merits

At the threshold, preliminary injunctive relief is not warranted because Plaintiffs have not demonstrated a likelihood of success on the merits of their APA claims.

### A.  The March 28 Letter Does Not Constitute Final Agency Action

The States are unlikely to succeed on their APA claims because they have not identified a reviewable final agency action.  The APA does not permit "judicial review over everything done by an administrative agency."  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (quotation marks omitted).  Rather, it limits review to "final agency action[s],"

and expressly excludes review of "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704; *accord Dalton v. Specter,* 511 U.S. 462, 469 (1994). This finality requirement seeks to avoid "piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242 (1980).

The agency action the States challenge here—"ED's determination to rescind the extension approvals it previously granted and declare Plaintiffs' liquidation period already expired," Pls.' Br. 3—does not meet the standard for finality. Agency action is final only when it (1) "'mark[s] the consummation of the agency's decisionmaking process'" and (2) is "'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Here, neither prong of the finality test is satisfied because, as the Department's public correspondences have announced, no final decision has been made concerning whether and to what extent any State's liquidation period will be extended for any given project.

The recission of the prior liquidation deadline does not "mark the 'consummation' of the agency's decisionmaking process," but rather is "tentative or interlocutory." *Bennett*, 520 U.S. at 178 (citation omitted). According to the March 28 and April 3 letters, states may submit applications seeking extensions of their liquidation deadlines for specific projects. March 28 Ltr.; April 3 Ltr. Thus, Plaintiffs' assertion that the March 28 Letter "announce[d] the agency's decision to terminate, with immediate effect, the prior extension approvals and deem the liquidation periods to have already expired," Pls.' Br. 19-20, is incomplete. According to its April 3 Letter, the Department is continuing to "consider an extension to [States'] liquidation period[s] on an

individual project-specific basis." April 3 Ltr.  It therefore has not "arrived at a definitive position on the issue" of whether any State's liquidation period may be extended.  *Darby v. Cisneros*, 509 U.S. 137, 144 (1993).

Because final determinations concerning the extension of States' liquidation periods have not yet been made, the actions embodied in the March 28 Letter also are not "one[s] by which rights or obligations have been determined." *Bennett*, 520 U.S. at 178.  To the contrary, both the March 28 and April 3 letters made clear that, upon further review, states may still apply for extensions of their liquidation periods.  March 28 Ltr.; April 3 Ltr.  Thus, whether the rescission of the previous extension will have "'direct and appreciable legal consequences,'" *Hawkes Co.*, 136 S. Ct. at 1814 (quoting *Bennett*, 520 U.S. at 178), is, to a meaningful extent, unclear.  For example, in the complaint, several States predict that, absent an extension of their liquidation periods, they will be required to cancel programs, halt work on projects, or terminate staff.  *See, e.g.*, Compl. ¶¶ 166, 171, 173, 178, 187.  But the April 3 Letter explains how those States may seek liquidation extensions for relevant projects that might obviate those potential harms.  *See* Apr. 3 Ltr.  And multiple states, including some Plaintiff States, have submitted project-specific extension requests.  *See* ESF Liquidation Extensions Website.  Given the "flexible" and "pragmatic" nature of the finality inquiry, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), and its goal of avoiding review of "agency process [that] might prove to have been unnecessary," *Standard Oil Co.*, 449 U.S. at 242, the Court should conclude that the March 28 Letter's rescission of the prior extensions does not satisfy either prong of the test.

Indeed, setting aside the issue of finality for purposes of APA review, the States cannot demonstrate a likelihood of success because their claims are not ripe.  "To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical

question . . . . A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quotation marks omitted). The ripeness doctrine "is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (quoting *Abbott Laboratories*, 387 U.S. at 148-49).

Here, assuming Plaintiffs have standing, and thus satisfy the constitutional element of the ripeness doctrine, they fail to satisfy the doctrine's two prudential requirements: "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Org. for Marriage*, 714 F.3d at 691. The "fitness" prong turns on "pragmatic" factors, including whether the agency's actions or inactions challenged in the lawsuit are "final" and whether the issues at stake would benefit from further factual development. *Seafarers Int'l Union of North America, AFL-CIO v. U.S. Coast Guard*, 736 F.2d 19, 26 (2d Cir. 1984). "[F]inal agency action pursuant to the Administrative Procedure Act is a crucial prerequisit[e] to ripeness." *Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (citations omitted). And here, for the reasons discussed above, that requirement is not met: the Department's replacement of its prior extension with a procedure whereby states can seek extensions on individual, project-specific grounds does not constitute a final action.

Nor do plaintiffs satisfy the second component of the prudential ripeness doctrine. The "hardship" prong turns on "whether the challenged action creates a direct and immediate dilemma for the parties." *Simmonds v. I.N.S.*, 326 F.3d 351, 360 (2d Cir. 2003) (quoting *Marchi v. Bd. of*

11

*Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999)).  "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* at 360.  Plaintiffs' alleged injuries stem from their assertion that the March 28 Letter precludes them from liquidating their remaining funds.  *See* Pls.' Br. 17-18.  But according to the April 3 Letter, the Department has established a process that demonstrates that the Department's recission of the prior extension is not final, and project-specific extensions may be obtained.  April 3 Ltr.

### B. The Department's Actions Are Neither Arbitrary and Capricious Nor Contrary to Law

Even if the Court were to determine that the Department's actions are final for purposes of APA review, Plaintiffs are not likely to succeed in demonstrating that they should be set aside.

The Department's actions are not "arbitrary and capricious."  Pls.' Br. 20-22.  The APA permits courts to "set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  But judicial review under the APA "is narrow and deferential," *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (citations and quotation marks omitted), and the reviewing court may not "substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Agency action may be set aside as arbitrary and capricious only where "'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Natural Resources Defense Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Plaintiffs' challenge to the Department's actions do not meet this high standard.  As a threshold matter, the regulation permitting extensions of the liquidation deadline gives the

Department authority to grant extensions where it determines they are "justified." 2 C.F.R. §
200.344(c). Here, the Department concluded that, in light of the end of the public health
emergency, it was appropriate to rescind the prior extension to allow it to evaluate "how a particular
project's extension is necessary to mitigate the effects of COVID on American students'
education." March 28 Ltr. Furthermore, Plaintiffs' arguments address recission of the prior
extension without addressing the language of the March 28 and April 3 letters indicating that
extensions of the liquidation period may still be obtained. Under the change-in-position doctrine,
"[a]gencies are free to change their existing policies as long as they provide a reasoned explanation
for the change, display awareness that [they are] changing position, and consider serious reliance
interests." *Food & Drug Admin. v. Wages and White Lion Investments, L.L.C.*, 145 S. Ct. 898, 917
(2025) (quotation marks omitted; alterations in original). Here, the Department was aware it was
changing its position—the March 28 Letter states that it had "reconsidered" the prior extension
requests and was "modifying the liquidation period." March 28 Ltr. The Department also
explained that "[e]xtending deadlines for COVID-related grants . . . years after the COVID
pandemic ended is not consistent with the Department's priorities and thus not a worthwhile
exercise of its discretion." *Id.* The March 28 Letter also considered states' reliance interests and
determined that they were "minimal" owing to the recency of the extension approval and the
Department's authority to reconsider its position. *Id.* Nonetheless, the letter permitted states to
seek extensions of their liquidation periods "on an individual project-specific basis." *Id.* The April
3 Letter further explains the availability of this application process for extending the liquidation
period, and the Department's website explains the process for appealing a denial. Apr. 3 Ltr.; ESF
Liquidation Extensions Website.

Thus, the Department has not "assume[d] incorrectly that all funding related to COVID-19 appropriations was intended only for use while the pandemic health emergency declaration was in place." Pls.' Br. 22. Although the March 28 Letter identifies the end of the pandemic as a basis for rescinding the prior extension, both it and the April 3 Letter also indicate that extensions may still be obtained on an individual, project-specific basis.

Finally, the States have not established a likelihood of success on their claim that the challenged actions are "contrary to law." Pls.' Br. 24-25. Here, in sum and substance, they contend that the Department improperly curtailed their access to ES grant funds based on the end of the public health emergency without Congressional authority to do so: "[w]here Congress intended to limit programs or appropriations based on the end of the pandemic, it did so directly by legislation." Pls.' Br. 24. But between the relevant provisions of the ARP and GEPA, Congress did provide a deadline for the use of these appropriations: September 30, 2024. ARP § 2001(a); 20 U.S.C. § 1226a. Beyond that, the applicable regulation provided an additional 120 days to liquidate all financial obligations and gave the Department discretion to extend that deadline "[w]here justified." 2 C.F.R. § 200.344(c). Moreover, Plaintiffs' argument does not fully characterize the Department's actions as set forth in the March 28 and April 3 letters. Those letters explain that the Department is changing the process by which states may liquidate remaining funds, by requiring them, on a project-specific basis, to describe "how a particular project's extension is necessary to mitigate the effects of COVID on American students' education," and provide "[a] justification of why the Department should exercise its discretion to grant [the] request." March 28 Ltr.; Apr. 3 Ltr. The letters do not support the blanket conclusion advanced by Plaintiffs.

## II.        Plaintiffs Have Not Shown Irreparable Harm

Plaintiffs have also failed to show irreparable harm, which is the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted).  "Irreparable harm is injury that is neither remote nor speculative[.]"  *New York v. U.S. Dep't of Homeland Security*, 969 F.3d 42, 86 (2d Cir. 2020).  Such injuries "cannot be remedied if a court waits until the end of trial to resolve the harm."  *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted).  Accordingly, "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief."  *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (quotation marks omitted).

Here, the States have not shown that they will suffer irreparable harm as a result of the March 28 Letter.  The States claim that the recission of the prior extension period will cause "substantial operational burdens for SEAs and LEAs."  Pls.' Br. 25.  But according to the March 28 Letter, funds may still be accessed and liquidated for projects "necessary to mitigate the effects of COVID on American students' education."  Mar. 28 Ltr.  States may follow the application process in the April 3 Letter, pursuant to which the Department has indicated it will "consider an extension to [a State's] liquidation period on an individual project-specific basis."  April 3 Ltr.  Indeed, four of the Plaintiff States have already submitted requests.  *See* ESF Liquidation Extensions Website.  Prior to submitting their own requests to the Department for access to the liquidation funds, Plaintiffs cannot claim to have suffered "irreparable harm" by a "temporary loss of income" that may be cured by either the Department's grant of a State's request to use liquidation funds or through the ordinary course of litigation.  *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does

not usually constitute irreparable injury."); *Broecker v. New York City Dep't of Educ.*, 573 F. Supp. 3d 878, 890 (E.D.N.Y. 2021), *aff'd*, No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd*, No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023) (citing *Sampson*). Without first following the process provided for in the April 3 Letter for the States to access ES funding, any alleged harm is speculative since the Department has not yet determined whether an extension of the liquidation period is appropriate with respect to a specific project. *See Grand River Enterprise*, 481 F.3d at 66 (injury must be "neither remote nor speculative").

Moreover, it is unclear from the complaint and the States' brief whether they may be able to cover any short-term shortfall in funding. *Cf. Dep't of Education v. California*, 145 S. Ct. 966, 969 (2025) ("respondents would not suffer irreparable harm" where "they have the financial wherewithal to keep their programs running" and "can recover any wrongfully withheld funds through suit in an appropriate forum"). For example, according to the complaint, Illinois "may have to end new teacher and principal mentoring programs," Compl. ¶ 173, and Minnesota "may have to narrow the scope of the planned work and pay for the remaining contractual obligations with state funds," *id.* ¶ 179. But because Plaintiffs may still request access to the liquidation funds, they cannot establish that those harms are irreparable. Indeed, a monetary loss is insufficient to establish irreparable harm "unless the movant provides evidence of damages that cannot be rectified by financial compensation." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991). That is a high standard that has not been met here.

### III.    A Preliminary Injunction Would Not Serve the Public Interest

The final two factors, balance of equities and the public interest, also weigh in the Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunctive relief). "In

determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (quotation marks omitted).

As an initial matter, because Plaintiffs cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009).

Those factors also tip in Defendants' favor if the Court were to consider them further. The March 28 Letter identifies the public's interest in ensuring that taxpayer funds are used for the purposes for which they were appropriated. March 28 Ltr. As explained above, Congress appropriated the ES funds for the purpose of responding to the COVID-19 pandemic. For example, the ARP provided funding to support the "safe return to in-person instruction," and funds to account for "learning loss" from the pandemic. PL 117-2, March 11, 2021, 135 Stat. 4. The Department is charged with administering these funds and, five years after the start of the pandemic, it has an interest in ensuring that the funds requested by the States are being utilized for their intended purposes. Accordingly, the April 3 Letter directs states seeking to liquidate further grant funds to explain "how a particular project's extension is necessary to mitigate the effects of COVID on American students' education." April 3 Ltr. That demonstrable public interest precludes Plaintiffs from making the showing necessary to obtain injunctive relief.

17

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.[3]

Dated:  New York, New York          Respectfully submitted,
        April 24, 2025


                                    JAY CLAYTON
                                    United States Attorney

                                    By: */s/   Dana Walsh Kumar*
                                    CHRISTOPHER K. CONNOLLY
                                    DANA WALSH KUMAR
                                    Assistant United States Attorneys
                                    86 Chambers Street, 3rd Floor
                                    New York, NY 10007
                                    Telephone: (212) 637-2761/2741
                                    Email: christopher.connolly@usdoj.gov
                                           dana.walsh.kumar@usdoj.gov

---

[3] In accordance with Fed. R. Civ. P. 65(c) and the President's March 11, 2025, memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," if the Court enters a preliminary injunction, the government respectfully requests that the Court require Plaintiffs to post a bond of $10,000. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); www.whitehouse.gov/presidential[1]actions/2025/03/ ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/.     The government further requests that, if a preliminary injunction is entered, the Court enter a stay of this action pending the disposition of any appeal authorized by the Solicitor General.

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 5,537 words.