## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al*.,

                Plaintiffs,

      v.

U.S. DEPARTMENT OF EDUCATION, *et al*.,

                Defendants.

Case No. 1:25-cv-02990 (ER)(BCM)

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

    I.     THE RESCISSION LETTER IS FINAL AGENCY ACTION RIPE
           FOR JUDICIAL REVIEW ........................................................ 2

    II.    ABSENT RELIEF PLAINTIFFS WILL CONTINUE TO SUFFER
           IRREPARABLE HARM .......................................................... 6

    III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS
           AND THE EQUITIES AND PUBLIC INTEREST WEIGH IN
           THEIR FAVOR ..................................................................... 8

    IV.   THE COURT SHOULD NOT REQUIRE A BOND ............................. 10

CONCLUSION .............................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Spear*,
   520 U.S. 154 (1997).............................................................................................. 2-3

*Corning Inc. v. PicVue Elecs., Ltd.*,
   365 F.3d 156 (2d Cir. 2004)...................................................................................10

*Darby v. Cisneros*,
   509 U.S. 137 (1993)................................................................................................5

*Deferio v. City of Syracuse*,
   193 F. Supp. 3d 119 (N.D.N.Y. 2016)...................................................................10

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
   591 U.S. 1 (2020)....................................................................................................6

*Doctor's Assocs., Inc. v. Stuart*,
   85 F.3d 975 (2d Cir. 1996)................................................................................ 10-11

*Encino Motorcars, LLC v. Navarro*,
   579 U. S. 211 (2016)...............................................................................................9

*Harrell v. Joshi*,
   No. 14-cv-7246, 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015) .............................11

*Lunney v. United States*,
   319 F.3d 550 (2d Cir. 2003).....................................................................................5

*Maine v. United States Dep't of Agriculture*,
   No. 25-cv-00131, 2025 WL 1088946 (D. Me. Apr. 11, 2025)................................11

*Mastrio v. Sebelius*,
   768 F.3d 116 (2d Cir. 2014).....................................................................................8

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
   883 F.3d 32 (2d Cir. 2018).................................................................................. 8-9

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010).....................................................................11

*New York v. Scalia*,
    490 F. Supp. 3d 748 (S.D.N.Y. 2020)......................................................................6

*Nken v. Holder*,
    556 U.S. 418 (2009)......................................................................................10

*Pacito v. Trump*,
    No. 25-cv-255, 2025 WL 893530 (W.D. Wash. Mar. 24, 2025)......................11

*Pharm. Soc'y of State of New York, Inc. v. New York Dep't of Soc. Servs.*,
    50 F.3d 1168 (2d Cir. 1995)..........................................................................10

*Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    337 F. Supp. 3d 308 (S.D.N.Y. 2018)............................................................5

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015)...................................................................5

*Sackett v. E.P.A.*,
    566 U.S. 120 (2012).........................................................................................5

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008)..............................................................................5

*Texas v. Brooks-LaSure*,
    No. 21-cv-00191, 2021 WL 5154219 (E.D. Tex. Aug. 20, 2021)....................8

**Federal Statutes**

5 U.S.C. § 704....................................................................................................................2

**Federal Regulations**

2 C.F.R. § 200.344...........................................................................................................10

**Rules**

Fed. R. Civ. P. 65.............................................................................................................10

**Miscellaneous Authorities**

Unitd States Department of Education, *Education Stabilization Fund Liquidation Extensions* (last accessed Apr. 29, 2025), available at https://www.ed.gov/grants-and-programs/formula-grants/response-formula-grants/covid-19-emergency-relief-grants/education-stabilization-fund-liquidation-extensions .................................................. 3-4

Senate Report 118-84, Committee on Appropriations 253 (July 27, 2023) .................................10

## INTRODUCTION

After previously extending Plaintiffs' time to liquidate nearly a billion dollars in education stabilization funds through March 2026, Defendants abruptly and without prior notice rescinded the extensions and simultaneously declared Plaintiffs' time for liquidating the funds to be expired, causing widespread chaos among Plaintiffs' state and local education agencies and non-public schools.[1]

In opposing Plaintiffs' motion to preliminarily enjoin this drastic change in ED's position, Defendants argue "no harm, no foul" because they are offering states an alternative—a new process requiring a six-step agency review to obtain project-specific extensions if they can demonstrate to ED's satisfaction how a particular project is necessary to mitigate the effects of the pandemic and justify why ED should exercise its discretion to allow the extension. In other words, instead of timely liquidating their ES funding through ministerial payment requests, Plaintiffs must now follow a new process that gives Defendants a clean slate for a do-over on ES funding grants. Defendants' new project-specific application process—subject to ED's unfettered discretion, with an uncertain timeframe and outcome—does nothing to redress the irreparable harm that Plaintiffs continue to suffer from the Rescission Letter.

Nor does the availability of this wholly inadequate *new process* render Defendants' rescission of the prior extension approvals not "final" for purposes of review under the APA. In any event, an agency action is "final" even when subject to reconsideration unless the action is inoperative pending the agency's reconsideration. 5 U.S.C. § 704. Here, the Rescission Letter became effective immediately.

_____

[1] The defined terms used in this reply are the same as those used in Plaintiffs' opening brief (ECF No. 11) ("Opening Br.").

On this record—consisting of the Rescission Letter as the sole basis for ED's drastic change in position—the Court should preliminarily enjoin Defendants from rescinding ED's prior extension approvals and declaring Plaintiffs' time to liquidate their ES funding to have already expired.

**ARGUMENT**

## I.    THE RESCISSION LETTER IS FINAL AGENCY ACTION RIPE FOR JUDICIAL REVIEW

Defendants maintain that the Rescission Letter is not final agency action for purposes of review under the APA because ED has invited states to request extensions on an individual project-specific basis. *See* Defendants' Memorandum of Law in Opposition (ECF No. 63) ("Opp.") at 9. Defendants' argument misses the mark, and conflicts with express statutory language in the APA.

Agency action is "final" for purposes of review under the APA if it: (i) "mark[s] the consummation of the agency's decisionmaking process—[and is not] of a merely tentative or interlocutory nature," and (ii) determines "rights or obligations ... from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up). The agency action Plaintiffs challenge here—the determinations in the Rescission Letter to rescind ED's prior extension approvals and declare Plaintiffs' liquidation periods to have already expired—are "final" under this test.

First, there is nothing "tentative" or "interlocutory" about either determination; as stated in the Rescission Letter, ED "has concluded" that any extension "was not justified" and "is modifying the liquidation period to end on March 28, 2025." Rescission Letter at 1. While the Rescission Letter states that ED "will consider an extension … on an individual project-specific basis," nothing in the Rescission Letter suggests that Defendants' determinations to rescind the prior extension approvals and terminate Plaintiffs' liquidation periods remain under review or subject

to further agency consideration. And the April 3, 2025 "Dear Colleagues" letter ("April 3 Letter") confirms these agency determinations are final: "all previously approved liquidation extensions *are no longer in effect*." April 3 Letter (emphasis added), available at https://www.ed.gov/media/document/dear-colleague-letter-follow-esf-funding-april-3-2025-109779.pdf.

Second, it is equally clear that the Rescission Letter determines Plaintiffs' "rights or obligations ... from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (cleaned up). Prior to the Rescission Letter, Plaintiffs had the "right" to submit timely requests to liquidate their ES funding awards until March 2026 through a ministerial process. Opening Br. at 8-9. The Rescission Letter extinguished that right by rescinding the prior extension approvals and modifying Plaintiffs' liquidation periods "to end on March 28, 2025." Rescission Letter at 1. The legal consequences for Plaintiffs that flow from the Rescission Letter could not be more apparent; instead of submitting a timely liquidation request without the need for further explanation or justification, Plaintiffs are now relegated to an onerous and time-consuming procedure that requires them to submit detailed information on a project-specific basis, including a "description of how a particular project's extension is necessary to mitigate the effects of COVID on American students' education" and a "justification of why the Department should exercise its discretion to grant" an extension for each project. April 3 Letter. The new request is then subject to a six-step agency review process involving a "Program Office Reviewer" and "Program Office Senior Leadership" and an administrative appeal process. *See* U.S. Department of Education, *Education Stabilization Fund Liquidation Extensions* (last accessed Apr. 29, 2025), available at https://www.ed.gov/grants-and-programs/formula-grants/response-formula-grants/covid-19-emergency-relief-grants/education-stabilization-fund-liquidation-extensions. ED provides no timeframe for completing this six-step review process, nor do Defendants indicate whether *any* of the over 150

project-specific extension requests received by ED as of April 23, 2025, have been decided. *Id.* This stands in stark contrast to the ministerial process ED is still following for payment requests "received prior to 5 pm Eastern Time on March 28, 2025." April 3 Letter.

Defendants attempt to obfuscate this straightforward analysis by suggesting that the legal consequences of the Rescission Letter are "unclear" because ED has not made "final determinations" on whether Plaintiffs may obtain project-specific extensions following the new, onerous process. Opp. at 10. But the outcome of any project-specific request under Defendants' new process is irrelevant; Plaintiffs are challenging the determinations in the Rescission Letter to rescind the prior extension approvals and terminate Plaintiffs' liquidation periods as of March 28, 2025, and those determinations are "final" regardless of whatever outcome may result from a different process Defendants now insist Plaintiffs must follow to regain the "right" to timely liquidate their ES funding awards that was stripped away by the Rescission Letter. And for this same reason, whether a handful of Plaintiff States have submitted requests for project-specific extensions under the new onerous process, Opp. at 6, 10, has no bearing on the Court's analysis.[2]

But even if the new process were relevant to assessing the finality of the determinations in the Rescission Letter (which is not the case), the outcome would be the same. Under the APA, agency action otherwise final is final for purposes of APA review "whether or not it may be subject to appeal *or reconsideration* 'unless the agency otherwise requires by rule and provides *that the action meanwhile is inoperative*.'" *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (quoting 5 U.S.C. § 704) (emphasis added); *see also Darby v. Cisneros*, 509 U.S. 137, 154 (1993)

---

[2] It also appears that ED's website upon which Defendants rely is inaccurate. California is listed as one of the states seeking project-specific extensions under the new process, but California has not done so. *See* Declaration of Natasha Middleton, sworn to on April 29, 2025, at ¶¶3-4.

(same); *Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal.").

Here, Defendants expressly provided that the rescission of ED's prior extension approvals and modification of Plaintiffs' liquidation periods to expire on March 28, 2025, were *effective immediately*, rather than "inoperative" pending consideration of any project-specific extension requests, and therefore the agency determinations in the Rescission Letter are "final." *Darby*, 509 U.S. at 154; *see also Planned Parenthood of New York City*, *Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 328-29 (S.D.N.Y. 2018) ("[C]ourts routinely hold that agency action is final where it affects grant eligibility criteria.").

Finally, Defendants argue that Plaintiffs' claims are not prudentially ripe because they are not fit for judicial decision and will not cause Plaintiffs hardship absent judicial review for the reason that Plaintiffs "can seek extensions on individual, project-specific grounds" under the new process.[3] Opp. at 11. Since fitness for judicial decision under the prudential ripeness standard and the finality test under the APA are closely related, Defendants' lack of fitness argument fails for the same reason that their lack of finality argument fails. *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008). This suit involves a final agency action—the Rescission Letter—and raises the purely legal question of whether Defendants, by issuing the Rescission Letter, violated the APA through conduct that was arbitrary and capricious and contrary to law. *See id.* at 89-90. Moreover, judicial review of the Rescission Letter "will not interfere with any ongoing administrative action" concerning the determinations in the Rescission Letter, and "there can be no further factual development because the Court must decide" whether Defendants' conduct is arbitrary and

---

[3] Defendants assume (and thereby concede) that "Plaintiffs have standing, and thus satisfy the constitutional element of the ripeness doctrine." Opp. at 11.

capricious and contrary to law based on just the Rescission Letter itself, the only document comprising the administrative record in this case.[4] *New York v. Scalia*, 490 F. Supp. 3d 748, 773 (S.D.N.Y. 2020). Plaintiffs' APA claims are clearly fit for judicial decision.

Nor can there be any serious doubt that Plaintiffs will endure hardship absent the Court's review of their APA claims. By Defendants' own admission, Plaintiffs are precluded by the Rescission Letter from submitting timely ministerial payment requests to liquidate hundreds of millions of dollars in remaining ES funding and must instead pursue an arduous and time-consuming new process of requesting "extensions on individual, project specific grounds," Opp. at 11, with no assurance as to when ED will act upon the requests or whether the requests will be granted, *see* April 3 Letter. For the reasons discussed in Plaintiffs' opening brief and below, Plaintiffs will suffer irreparable harm absent this Court's review of their APA claims—harm that will not be redressed by forcing them to pursue Defendants' new onerous process for requesting extensions on a project-specific basis. Opening Br. at Point II.B.; *infra*, at Point II.

## II.    ABSENT RELIEF PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM

In their opening brief, Plaintiffs demonstrated that the Rescission Letter has already caused them to suffer irreparable harm, with more harm visited upon them with every day that the chaos sown by Defendants' actions is allowed to continue. Opening Br. at 25-27.

---

[4] Defendants have not filed a certified administrative record and offer no documentation to expand on the reasoning behind, and justification for, their determinations beyond what is set forth in the Rescission Letter. Nor can Defendants rely on the April 3 Letter as it post-dates the agency's final action. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 21 (2020) (holding an agency's rescission cannot be upheld on the basis of impermissible *post hoc* rationalization).

For example:

- New York's and Illinois' respective SEAs will imminently be forced to fire staff responsible for managing ES funding programs, with no guarantee that they will be able to rehire these experienced employees at the end of this case. Seaton-IL ¶¶25(c), 25(f); Coughlin-NY ¶¶55-57. Training new hires will require states to expend resources. *See* Coughlin-NY ¶57.

- Many of Plaintiffs' SEAs, LEAs, and non-public schools have been told by vendors that they cannot perform ES-funded programs intended to compensate for lost instruction time, while other Plaintiffs have had to, or expect imminently to, cancel contracts for such programs due to lack of funding. Slaga-AZ ¶¶26-27; Pierson-CA ¶¶14-15; Seaton-IL ¶25(a); Perkins-Cohen-MD ¶¶13-15; Wright-MD ¶9; Rice-MI ¶¶23-25; Coughlin-NY ¶¶50-54; Supplemental Declaration of Alison Perkins-Cohen, sworn to on April 29, 2025 ("Supp. Perkins-Cohen-MD"), at ¶¶4-8.

- Many of Plaintiffs' SEAs, LEAs, and non-public schools have had to, or will soon have to, terminate contracts with vendors engaged in capital improvement projects—including critical HVAC projects—that are funded entirely by ES funds. Perkins-Cohen-MD ¶¶13-15; Rice-MI ¶22; Coughlin-NY ¶¶47-49; Rowe-PA ¶¶24-25, 28. The immediate cessation of work by contractors in the midst of upgrade projects has left schools with unfinished construction work that endangers the health and safety of students and teachers and renders areas within schools unusable. *See, e.g.*, Coughlin-NY ¶48 (describing holes left in the walls of an unfinished HVAC project).

- Many vendors have already incurred expenses under their contracts that they can no longer recover through reimbursement requests to LEAs and SEAs as a result of the Rescission Letter, exposing Plaintiffs to potential collection actions. Opening Br. at 17; Pierson-CA ¶15; Coughlin-NY ¶¶58-61.

- Existing budgetary constraints do not permit Plaintiffs to make up for the substantial shortfall resulting from the Rescission Letter. *See* Coughlin-NY ¶¶46, 61; Slaga-AZ ¶25; Stewart-DC ¶11; Martin-DE ¶13; Seaton-IL ¶26; Chasse Johndro-ME ¶36; Ehling-NJ ¶20; Wetherell-OR ¶25; Rowe-PA ¶30; Supp. Perkins-Cohen-MD ¶8.

In response to this strong showing of irreparable harm, Defendants rely primarily on their new onerous process for seeking extensions on a project-specific basis. Opp. at 15-16. For all the reasons provided in Point I above, Defendants cannot and do not redress Plaintiffs' irreparable harm by arbitrarily nullifying and replacing Plaintiffs' right to liquidate funds through timely ministerial payment requests with a new onerous process affording them the mere *possibility* that, at some unknown time in the future, Defendants may or may not exercise their unfettered discretion

to restore the liquidation rights they have abruptly taken away. *See Texas v. Brooks-LaSure*, No. 21-cv-00191, 2021 WL 5154219, at *13 (E.D. Tex. Aug. 20, 2021) (holding that "possibility of permanent … relief" as part of agency's administrative appeal process did not "negate[ plaintiffs'] showing of irreparable harm" from agency's sudden rescission of previously granted approval).

Defendants also argue there is no irreparable harm because "it is unclear from the complaint and States' brief whether they may be able to cover any short-term shortfall in funding." Opp. at 16. Defendants ignore the testimony Plaintiffs have submitted in support of this motion (ECF Nos. 12-28), citing instead to two paragraphs in the Complaint. *Id.* The sworn testimony in the record establishes that existing budgetary constraints prevent Plaintiffs from covering the substantial shortfall caused by Defendants' actions. *See* Coughlin-NY ¶¶46, 61; Slaga-AZ ¶25; Stewart-DC ¶11; Martin-DE ¶13; Seaton-IL ¶26; Chasse Johndro-ME ¶36; Ehling-NJ ¶20; Wetherell-OR ¶25; Rowe-PA ¶30.

## III.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AND THE EQUITIES AND PUBLIC INTEREST WEIGH IN THEIR FAVOR

As a threshold matter, Defendants are wrong in contending that Plaintiffs seek a preliminary injunction that is mandatory (as opposed to prohibitory) and therefore must satisfy a higher standard. Opp. at 8. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). Here, the status quo is the status that existed just prior to 5:03pm ET on March 28, 2025, when Defendants sent the Rescission Letter. *See Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam) (holding the status quo is "the last actual, peaceable uncontested status which preceded the pending controversy"). At that moment, ED's prior extension approvals were effective, including the extension of Plaintiffs' liquidation periods for their ARP ES funding awards allowing them to submit timely ministerial payment requests to

ED through March 2026 without having to meet the onerous conditions Defendants have specified for the new process to seek project-specific extensions. Plaintiffs' Proposed Preliminary Injunction accomplishes nothing more than restoring the parties to the status quo as it existed just before the Rescission Letter was sent, and is therefore prohibitory, not mandatory. *N. Am. Soccer League*, *LLC*, 883 F.3d at 36-37.

Defendants pay only lip service to the change-in-position doctrine, contending that they satisfy the standard because they "explained" their actions in the Rescission Letter. Opp. at 13. But the standard requires Defendants to provide not just any explanation, but a "reasoned" one. *Encino Motorcars, LLC* v. *Navarro*, 579 U. S. 211, 221-22 (2016). Defendants' explanation is not "reasoned." *See* Opening Br. at 22-23. Nor does Defendants' conclusory pronouncement that any reliance was "'minimal' owing to the recency of the extension approval and [ED's] authority to reconsider its position," Opp. at 13 (cleaned up), constitute the requisite consideration of Plaintiffs' "serious reliance interests," *Encino Motorcars*, 579 U. S. at 222 (cleaned up), for the reasons previously stated, *see* Opening Br. at 23-24.

Defendants' response to Plaintiffs' contrary-to-law APA claim is equally unavailing. As Plaintiffs established in their opening brief, Congress intended to retain the ES funding in place for use by SEAs and LEAs in ameliorating the long-term effects of COVID-19 despite the end of the pandemic, *see id.* at 24-25, so Defendants' decision to rescind ED's prior extension approvals *because* "the COVID pandemic ended," Rescission Letter at 1, contravenes Congress' intent. Defendants also misleadingly suggest that Congress intended Plaintiffs to liquidate their ES funding within 120 days of September 30, 2024 (*i.e.*, by January 28, 2025), but that ignores applicable regulations providing that ED "may approve extensions," 2 C.F.R. § 200.344(c), and a

Senate report encouraging ED to do so liberally with minimal burden on states, Senate Report 118-84, Committee on Appropriations 253 (July 27, 2023), available at https://perma.cc/BGA9-XFBP.

Moreover, Defendants seek to obscure the obvious conflict between their actions and Congress' intent by contending they are merely "changing the process by which states may liquidate remaining funds." Opp. at 14. That characterization belies reality. The Rescission Letter does not merely "chang[e] the process." Rather, it eviscerates Plaintiffs' right to timely liquidate awarded ES funding through a ministerial process and imposes on them a new onerous application procedure that gives ED a do-over on awarding appropriated ES funds in a manner that conflicts with Congress' intent. The APA precludes Defendants from doing so on a whim, without any reasoned explanation or consideration of Plaintiffs' serious reliance interests.

Defendants' argument on the balance of equities and public interest factors—which merge here because the federal government is a party, *Nken v. Holder*, 556 U.S. 418, 435 (2009)—is equally without merit. Because Defendants' conduct violates the APA, there is a strong public interest in preliminarily enjoining Defendants from enforcing the Rescission Letter, *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 131 (N.D.N.Y. 2016), and Defendants suffer no harm from an injunction that preserves the status quo, *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015).

## IV.     THE COURT SHOULD NOT REQUIRE A BOND

The Court is "'vested with wide discretion'" in determining what amount of security, if any, is appropriate under Federal Rule of Civil Procedure 65(c). *Doctor's Assocs.*, *Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)). The Court is required to make this determination before granting a preliminary injunction. *Corning Inc. v. PicVue Elecs.*, *Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004).

The Court should exercise its discretion to dispense with requiring Plaintiffs to post a bond because this is a case "involving the enforcement of public interests arising out of comprehensive

federal health and welfare statutes," here COVID-19 appropriation laws. *Pharm. Soc'y of State of New York*, *Inc. v. New York Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995) (cleaned up).

Additionally, it is appropriate for the Court to "'require no bond [because here] there has been no proof of likelihood of harm" to the Defendants if Plaintiffs are permitted to submit timely payment requests to liquidate the appropriated ES funding that ED has already awarded. *Doctor's Assoc.* 85 F.3d at 985 (quoting *Ferguson*, 299 F.2d at 675); *see also Pacito v. Trump*, No. 25-cv-255, 2025 WL 893530, at *15 (W.D. Wash. Mar. 24, 2025) (waiving the bond requirement based on finding cost to the government to be "minimal" where funds at issue "have already been appropriated by Congress, and whose expenditure is mandatory").

Finally, the Court should not require Plaintiffs to post any bond because "the likelihood of [Plaintiffs'] success on the merits is overwhelming." *New York City Triathlon*, *LLC v. NYC Triathlon Club*, *Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010); *Maine v. United States Dep't of Agriculture*, No. 25-cv-00131, 2025 WL 1088946, at *30 (D. Me. Apr. 11, 2025) (finding the need for a "substantial bond" is minimized where a plaintiff's "likelihood of success on the merits of the claims at issue is extraordinarily high") (cleaned up).

Accordingly, the Court should reject Defendants' argument that Plaintiffs should post a bond in the nominal sum of $10,000, Opp. at n.3—even if deemed adequately raised despite being "made only in a footnote," *Harrell v. Joshi*, No. 14-cv-7246, 2015 WL 9275683, at *2 n.5 (S.D.N.Y. Dec. 18, 2015) (cleaned up).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter their Proposed Preliminary Injunction Order (ECF No. 11-2), along with granting such other relief as the Court deems necessary and appropriate to maintain the status quo pending resolution of this action.

11

Dated: New York, New York
    April 29, 2025

                  Respectfully submitted,

LETITIA JAMES
ATTORNEY GENERAL OF NEW YORK

By: */s Andrew Amer*
Andrew Amer
  *Special Counsel*
Molly Thomas-Jensen
  *Special Counsel*
Rabia Muqaddam
  *Special Counsel for Federal Initiatives*
Stephen C. Thompson
  *Special Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*


ROB BONTA
ATTORNEY GENERAL OF CALIFORNIA

By*:   /s/ Maureen C. Onyeagbako*
Maureen C. Onyeagbako**
  *Supervising Deputy Attorney General*
José Pablo Galán de la Cruz**
  *Deputy Attorney General*
Cheryl L. Feiner**
  *Senior Assistant Attorney General*
California Attorney General's Office
1300 I Street, Ste. 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 210-7324
Email:  Maureen.Onyeagbako@doj.ca.gov
        Pablo.Galan@doj.ca.gov
        Cheryl.Feiner@doj.ca.gov

*Counsel for Plaintiff State of California*

KRISTIN K. MAYES
ATTORNEY GENERAL OF ARIZONA

By: /s/ *Alexa Salas*
Alexa Salas**
  *Assistant Attorney General*
Lauren Watford*
  *Assistant Attorney General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Alexa.Salas@azag.gov
Lauren.Watford@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*


KATHLEEN JENNINGS
ATTORNEY GENERAL OF THE STATE OF
DELAWARE

By: /s/ *Vanessa L. Kassab*
Ian Liston
  *Director of Impact Litigation*
Vanessa L. Kassab
  *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

BRIAN L. SCHWALB
ATTORNEY GENERAL FOR THE DISTRICT OF
COLUMBIA

By: */s/ Andrew Mendrala*
Andrew Mendrala**
   *Assistant Attorney General*
Public Advocacy Division
Office of the Attorney General for the
District of Columbia
400 Sixth Street, NW Washington, DC
20001
(202) 724-9726
Andrew.Mendrala@dc.gov

*Counsel for the District of Columbia*


AARON M. FREY
ATTORNEY GENERAL FOR THE STATE OF
MAINE

By:*/s/ Sarah A. Forster*
Sarah A. Forster*
   *Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145
Sarah.Forster@maine.gov

*Counsel for the State of Maine*

ANNE E. LOPEZ
ATTORNEY GENERAL FOR THE STATE OF
HAWAI'I

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
   *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
   *Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*


KWAME RAOUL
ATTORNEY GENERAL FOR THE STATE OF
ILLINOIS

By: */s/ Elena S. Meth*
Cara Hendrickson**
   *Assistant Chief Deputy Attorney General*
Elena S. Meth**
   *Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(773) 835-0182
Cara.Hendrickson@ilag.gov
Elena.Meth@ilag.gov

*Counsel for the State of Illinois*

ANTHONY G. BROWN
ATTORNEY GENERAL FOR THE STATE OF
MARYLAND

By: /s/ Keith M. Jamieson
Elliott Schoen*
   *Principal Counsel*
   *Assistant Attorney General*
Alan J. Dunklow*
   *Deputy Principal Counsel*
   *Assistant Attorney General*
Maryland State Department of Education
Keith M. Jamieson*
   *Assistant Attorney General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202
(410) 576-6960
kjamieson@oag.state.md.us

*Counsel for the State of Maryland*

DANA NESSEL
ATTORNEY GENERAL OF MICHIGAN

By: /s/ Neil Giovanatti
Neil Giovanatti
BreAnna Listermann*
   *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ListermannB@michigan.gov

*Counsel for the People of the State of
Michigan*

ANDREA JOY CAMPBELL
ATTORNEY GENERAL OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz**
   *State Solicitor*
Katherine Dirks
   *Chief State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2427
david.kravitz@mass.gov

*Counsel for the
   Commonwealth of Massachusetts*

KEITH ELLISON
ATTORNEY GENERAL FOR THE STATE OF
MINNESOTA
By: /s/ Liz Kramer
Liz Kramer**
   *Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

AARON D. FORD
ATTORNEY GENERAL OF NEVADA

By: /s/ Heidi Parry Stern
Heidi Parry Stern (Bar. No. 8873)
   *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

14

MATTHEW J. PLATKIN
  ATTORNEY GENERAL OF NEW JERSEY

*/s/ Lauren E. Van Driesen*
Lauren E. Van Driesen
Jessica L. Palmer
Justine Longa**
  *Deputy Attorneys General*
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Lauren.VanDriesen@law.njoag.gov
Jessica.Palmer@law.njoag.gov
Justine.Longa@law.njoag.gov

*Counsel for the State of New Jersey*


DAN RAYFIELD
ATTORNEY GENERAL FOR THE STATE OF
OREGON

By:   */s/ Sara Van Loh*
Sara Van Loh OSB #044398*
  *Senior Assistant Attorney General*
100 SW Market Street
Portland, Oregon 97201
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov

*Attorneys for the State of Oregon*

RAÚL TORREZ
ATTORNEY GENERAL OF THE STATE OF NEW
MEXICO

*/s/ Anjana Samant*
Anjana Samant**
  *Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
asamant@nmdoj.gov
(505) 270-4332

*Counsel for the State of New Mexico*


JENNIFER C. SELBER
  *General Counsel*
Michael J. Fischer
  *Executive Deputy General Counsel*

By:*/s/ Thomas P. Howell*
Thomas P. Howell*
  *Deputy General Counsel*
Governor's Office of General Counsel
30 N. 3rd Street, Suite 200
Harrisburg, PA 17101
(717) 460-6786
thowell@pa.gov

*Counsel for Governor Josh Shapiro,*
*Commonwealth of Pennsylvania*


\* Admitted Pro Hac Vice
\*\* Pending Pro Hac Vice applications filed/to
be filed

**RULE 7.1 CERTIFICATION**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Reply Memorandum of Law contains 3,493 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
      April 29, 2025

LETITIA JAMES
Attorney General of the State of New York

By: /s Andrew Amer
Andrew Amer
  Special Counsel
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov