# EXHIBIT A



THE DEPARTMENT OF EDUCATION

WASHINGTON, DC 20202

May 11, 2025

Dear Colleague,

On March 28, 2025, the Department of Education (the Department or ED) issued a letter to State Education Chiefs rescinding its prior extensions of the liquidation period for COVID-related grants awarded under the Education Stabilization Fund (ESF) program. On April 3, the Department followed up with an additional letter outlining the process for requesting extensions for specific projects.

On May 6, 2025, the United States District Court for the Southern District of New York entered a preliminary injunction in *New York et al. v. Department of Education et al.*, 1:25-cv-02990-ER, enjoining the Department from "enforcing or implementing as against Plaintiffs" the Secretary's March 28 revocation of the extension period. But the order expressly authorizes the Department to "modify[] ED's previously approved periods for Plaintiffs to liquidate their obligations under the ESF" by "providing notice to Plaintiffs at least fourteen (14) days prior to the effective date of such modification."

Consistent with the order, this letter officially notifies the plaintiffs in the *New York* litigation[1] that the Department is modifying the period to liquidate obligations under the ESF program to terminate on May 24, 2025. States should use this 14-day notice period to wind down their existing obligations for work already completed.

*Background*

At the onset of the COVID-19 pandemic in 2020 and 2021, Congress enacted three pieces of emergency relief legislation: the Coronavirus Aid, Relief, and Economic Security (CARES) Act, the Coronavirus Response and Relief Supplemental Appropriations Act of 2021 (CRRSAA), and the American Rescue Plan (ARP) Act of 2021. Together, these three programs provided over $200 billion in funds to States and outlying areas for distribution to public and private schools impacted by the COVID-19 pandemic. ESF funds were intended to assist recipients to "prepare, prevent, and respond to coronavirus." CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 564 (Mar. 23, 2024); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 1924 (Dec. 27, 2020); *see* American Rescue Plan Act of 2021, Pub. L. 117-2, 135 Stat. 4, 19, sec. 2001 (Mar. 11, 2021). The amount of federal funds available under these programs was

---

[1] The plaintiffs are Arizona, California, the District of Columbia, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Nevada, Oregon, and Pennsylvania.

unprecedented. Prior to the pandemic, the largest ED grant program in history had provided only $16.5 billion annually to all States and outlying areas.

ESF recipients generally had a limited period to obligate those funds specified by Congress. The obligation period expired for the CARES Act on September 30, 2022; for the CRRSAA on September 30, 2023; and for the ARP Act on September 30, 2024. The prior Administration ended the national disaster declaration for COVID-19 on April 10, 2023.

The obligation period for each statute was followed by a liquidation period, during which the States could draw down their grant awards to cover expenses incurred pursuant to their authorized obligations. The default liquidation period for federal grant awards is 120 days. 2 CFR § 200.344(c). The regulatory liquidation period expired on January 28, 2023 for CARES Act funds; on January 29, 2024 for CRRSAA funds; and on January 28, 2025 for ARP Act funds.

Prior to the conclusion of the liquidation period, the Department invoked its discretionary authority under 2 CFR § 200.344(c) to extend the liquidation period for CARES Act, CRRSAA, and ARP Act grants far beyond the default window. The CARES Act extension has since expired, and the CRRSAA extension expired on March 31, 2025. But the ARP Act extension runs until March 2026 for 47 States and several outlying areas for one or more ESF programs. These actions were unprecedented; the Department had never previously offered such a broad-based opportunity to all States to liquidate funds in a grant program for years after the original obligation period set by Congress.

*Explanation*

The Department has determined that its previous grant of broad-based extensions was unjustified and should be rescinded. The Department is therefore exercising its discretion to terminate those extensions under 2 CFR § 200.344(c).

The relevant appropriations statutes generally require ESF funds to be used to "prepare, prevent, and respond to coronavirus." CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 564 (Mar. 23, 2024); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 1924 (Dec. 27, 2020); *see* American Rescue Plan Act of 2021, Pub. L. 117-2, 135 Stat. 4, 19, sec. 2001 (Mar. 11, 2021). But the pandemic concluded more than two years ago. In the time since the pandemic ended, States have increasingly tapped ESF funds in ways that are less and less connected to direct academic services to students and the ongoing educational harms caused by COVID.

For example, $11.5 million in ESF money went to fund so-called "Social-Emotional Learning Hubs." Another $11.4 million funded the construction of a turf field. $3 million underwrote playground renovations. $2.3 million bankrolled a window-replacement project. And $1.2 million paid for IT support for an anti-oppression, anti-racism portal. Congress did not intend scarce taxpayer dollars earmarked for COVID relief to fund these kinds of projects. Moreover, in the Department's independent judgment, this money can be put to better uses than simply

serving as a slush fund for state educational spending unrelated either to COVID mitigation or even direct academic services to students.

Other evidence confirms that these funds, along with much other federal education funding, have not been put to their highest and best use. A record-breaking grant program should produce record-breaking results in American education, yet just the opposite happened. According to the recent National Assessment of Educator Progress (NAEP) scores, American students' academic performance declined even as the federal government poured an unprecedented sum of more than $200 billion into American schools. For example, fourth and eighth grade students (the only two groups sampled) saw a significant decrease in average reading scores. Similarly, eighth graders' mathematics scores remained stagnant.

The Department recognizes that it previously determined that an extension was justified. But it has revisited that threadbare determination and now concludes that the continued use of federal funds for COVID-related harms more than two years after the pandemic ended is unwarranted. These funds would be more effectively devoted to other functions, including other Department initiatives or reduction of the exploding federal deficit.

Moreover, despite a supposedly "careful review," the original extension letters included no explanation for the extensions, and the Department has serious questions about the verification process that resulted in the approval of effectively blanket extensions. Those concerns are heightened by the extensions' extreme length: for the ARP Act, the extension was more than three times the length of the default period  The most effective way to allay those concerns—with due regard to both the interests of grant recipients and the policies of the Department—is to run a new, individualized process that considers the unique circumstances of each grantee in light of their past performance, their intended use of the funds, and the lengthy period they have already enjoyed for liquidating the funds.

Thus, as detailed below, the Department will still consider particularized extension requests for specific projects. The Department's present determination is merely that the extreme, broad-based liquidation extensions previously granted are inappropriate. The Department recognizes that, in certain instances, ESF funds may still positively contribute to providing direct academic services to students for combating learning loss or other lasting harms inflicted by the pandemic. The individualized process available to recipients going forward appropriately accounts for these situations.

The Department's recent experience confirms the necessity of this individualized review process. After receiving the extensions, grantees began drawing down funds more rapidly. The reimbursement requests submitted by grantees did not suffice to explain why the pace of drawdowns accelerated. Indeed, in the hours after the May 6 preliminary injunction, plaintiff states submitted requests totaling over $200 million. These changes in grantee practices justifies a more individualized review process to determine how funds are being used and whether an extension is appropriate.

Finally, the Department has considered any reliance interests that grant recipients may possess in the extensions. In the Department's view, no valid reliance interests exist. Grant recipients are not entitled to extensions of the default 120-day period, which lie in the Department's discretion. 2 CFR § 200.344(c). Plaintiffs have already enjoyed nearly twice that amount of time to liquidate their funds. And grant recipients knew that the extensions previously granted by the Department were subject to withdrawal by the agency in its discretion at any time.

To the extent recipients possess reliance interests, however, the agency has properly accounted for them. Consistent with the court's order, States now have 14 days to liquidate expenses as they wind down their ESF-funded programs. That period of time allows States to terminate contracts as necessary and otherwise conclude their obligations in an orderly way. The 14-day period also enables plaintiffs to seek reimbursement for authorized costs that they have already incurred and that are appropriately substantiated and otherwise justified. States plainly have no reliance interests in costs that they have not yet incurred. To the extent 14 days somehow provides an insufficient amount of time for a State to liquidate its obligations, the Department will consider extension requests on a project-specific basis, as explained below.

*Drawdown Procedures*

As noted in the U.S. Department of Education's (Department) [February 19, 2025, communication](), all payments related to the ARP Act programs have shifted to the Department's standard reimbursement payment structure. The standard reimbursement process requires that expenditures be paid in advance using State or local funds and supported with documentation.

The reimbursement payment structure was applied to all grant awards with approved CRRSA and ARP Act liquidation extensions and all payments must be aligned to the grantee's approved liquidation extension. The reimbursement payment structure was also applied to ARP Act grant awards with approved requests for a waiver of section 421(b) of the General Education Provisions Act to extend the period of availability of a State educational agency's (SEA) administrative funds consolidated under section 8201 of the Elementary and Secondary Education Act of 1965 (ESEA). You may continue to liquidate obligations under your previously-approved liquidation extension to the extent consistent with winding down your ESF obligations until May 24, 2025.

To draw down funds, please submit your payment request to the appropriate program office mailbox:

- ARP ESSER and EANS: [ESSERF@ed.gov](mailto:ESSERF@ed.gov)
- ARP-HCY: [HomelessED@ed.gov](mailto:HomelessED@ed.gov)
- ARP-OA SEA: [ESF.Outlying@ed.gov](mailto:ESF.Outlying@ed.gov)

Please include in your request for reimbursement:

1. The amount of funding requested and the PR award number for each request.

2. Documentation that delineates which entities are included within the payment request:

    a. Grantee/State reservation amount included in the drawdown (if applicable)
    b. State consolidated administrative fund amount (if applicable per an approved waiver)
    c. Each LEA/subrecipient amount listed separately by subrecipient (if applicable)

3. Documentation for the State or local funds that have been expended. This documentation may include, but is not limited to, file extracts from the State's grant management system or other payment files. Please remove any personally identifiable information prior to sending to the Department. As a reminder, each State with an approved liquidation extension must provide documentation to support the allowability and timely obligation of associated liquidations upon request. Department staff will review the documentation for alignment to the State's approved liquidation extension request.

It is helpful to include your State name and grant award number in the subject line of the email to assist us with processing.  Department staff will review all requests received by May 24, 2025 and, if approved, we will release the payment in G5 to your grant account.

*Project-Specific Liquidation Extensions*

Despite the revocation of the existing, blanket extensions announced in this letter, the Department will consider a particularized extension to your liquidation period beyond May 24, 2025 on an individual project-specific basis.

To request an extension, you must submit the following information for each project (*e.g.*, each contract) for which you are seeking an extension:
1. State/Outlying Area
2. Grant Award Number
3. Entity requesting the extension (State entity or subrecipient name)
4. Name and short description of the project (*e.g.*, contracted activity)
5. Vendor (if the request is to reimburse a specific contractor/vendor)
6. Requested timeframe for extension
7. Amount of funds requested for extension
8. **A brief description of how a particular project's extension is consistent with the authorizing statute(s)**
9. **A justification of why the Department should exercise its discretion to grant your request**
10. **Whether the particular project mitigates the educational effects of COVID and, if so, how**
11. An assurance that the funds were properly obligated no later than September 30, 2024.

States and Outlying Areas may submit requests individually or in batches. Please submit requests to the corresponding program office:
- ARP ESSER and EANS: ESSERF@ed.gov
- ARP-HCY: HomelessED@ed.gov

- ARP-OA SEA: ESF.Outlying@ed.gov

The Department will review each request as it is received and work to provide a response as quickly as possible. If you have questions, please contact my team at the email address above for the corresponding program.

Sincerely,

*Hayley B. Sanon*

Hayley B. Sanon
Principal Deputy Assistant Secretary and
Acting Assistant Secretary
Office of Elementary and Secondary Education