# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al*.,

                   Plaintiffs,

     v.

U.S. DEPARTMENT OF EDUCATION, *et al*.,

                   Defendants.

Case No. 1:25-cv-02990 (ER)(BCM)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR IMMEDIATE INJUNCTIVE RELIEF PURSUANT TO RULE 65**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................ 2

    A. ED'S PRIOR EXTENSION APPROVALS ...................................................... 2

    B. THE MARCH 28 RESCISSION LETTER ....................................................... 4

    C. THE COURT'S MAY 6 PI ORDER ................................................................. 5

    D. THE MAY 11 RESCISSION LETTER ............................................................ 6

ARGUMENT ..................................................................................................................... 7

  I. PLAINTIFFS ARE ENTITLED TO IMMEDIATE INJUNCTIVE RELIEF ..................... 7

    A. Plaintiffs Are Likely to Succeed on the Merits ................................................ 8

      1. Defendants' New Rescission Letter Constitutes Final Agency Action Subject
        to Judicial Review Under the APA ............................................................. 8

      2. Defendants' Latest Change in Position Violates the APA ........................... 9

    B. The Court's Prior Rulings Against Defendants on the Irreparable Harm and
      Equities/Public Interest Factors are Law of the Case .................................... 17

  II. THE COURT SHOULD DIRECT DEFENDANTS TO PROCESS PLAINTIFFS'
     PENDING PAYMENT REQUESTS WITHOUT DELAY ................................ 18

  III. THE COURT SHOULD NOT REQUIRE A BOND ....................................... 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bauer v. DeVos*,
  325 F. Supp. 3d 74 (D.D.C. 2018) ............................................................................7

*Bennett v. Spear*,
  520 U.S. 154 (1997)......................................................................................................8

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ...............................................................................13

*City of Providence v. Barr*,
  954 F.3d 23 (1st Cir. 2020)......................................................................................13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020).................................................................................................9, 16

*Doctor's Assocs., Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996).......................................................................................19

*Encino Motorcars, LLC v. Navarro*,
  579 U. S. 211 (2016).........................................................................................9, 16

*FCC v. Fox Television Stations, Inc.*,
  556 U. S. 502 (2009).................................................................................................16

*Food & Drug Admin. v. Wages and White Lion Investments, L.L.C.*,
  604 U.S. ___, 2025 WL 978101 (April 2, 2025) ...............................................9-10

*Garland v. City of New York*,
  665 F. Supp. 3d 295 (E.D.N.Y. 2023) ...................................................................17

*Haywood v. Bureau of Immigration*,
  372 Fed. App'x 122 (2d Cir. 2010) .........................................................................14

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ...............................................................................13

*Johnson v. Holder*,
  564 F.3d 95 (2d Cir. 2009).......................................................................................17

*Maine v. United States Dep't of Agriculture*,
   No. 25-cv-00131, 2025 WL 1088946 (D. Me. Apr. 11, 2025)..............................................19

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010)....................................................................................19

*New York v. U.S. Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020)...................................................................................................7, 9

*New York v. United States Dep't of Educ.*,
   477 F. Supp. 3d 279 (S.D.N.Y. 2020).......................................................................................7

*Nnebe v. Daus*,
   510 F. Supp. 3d 179 (S.D.N.Y. 2020).......................................................................................7

*Pharm. Soc'y of State of New York, Inc. v. New York Dep't of Soc. Servs.*,
   50 F.3d 1168 (2d Cir. 1995)....................................................................................................19

*Saget v. Trump*,
   375 F. Supp. 3d 280 (E.D.N.Y. 2019) .......................................................................................9

*United States v. Quintieri*,
   306 F.3d 1217 (2d Cir. 2002)..................................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).......................................................................................................................7

**Federal Statutes**

5 U.S.C. § 705.................................................................................................................................7

20 U.S.C. § 1225.............................................................................................................................3

American Rescue Plan Act of 2021, Pub. L. No. 117-2 (2021) ...........................................2, 11, 16

CARES Act, Pub. L. 116-136 (Mar. 27, 2020)..............................................................................16

**Federal Regulations**

2 C.F.R. § 200.344 .....................................................................................................................3, 11

**Rules**

Fed. R. Civ. P. 65 ................................................................................................................7, 19

**Miscellaneous Authorities**

Senate Report 118-84, Committee on Appropriations (July 27, 2023) ....................................3, 15

## INTRODUCTION

Plaintiffs require the Court's immediate intervention because the U.S. Department of Education ("ED") and Education Secretary Linda McMahon are once again seeking to block Plaintiffs' ability to liquidate their education stabilization ("ES") funds by rescinding ED's prior extension approvals. Just five days after the Court enjoined Defendants' attempt on March 28 to block Plaintiffs' access to their ES funds (ECF No. 77) ("PI Order"), Defendants notified Plaintiffs by letter dated May 11, 2025, that they are "modifying" the period for Plaintiffs to liquidate their ES funds "to terminate on May 24, 2025." *See* May 11, 2025 "Dear Colleague" Letter from Hayley B. Sanon ("May 11 Rescission Letter") at 1.[1]

This time around, Defendants rehash the "end-of-the-pandemic" justification previously rejected by the Court and advance a handful of new, equally specious "explanations," including that previously approved projects are nevertheless insufficiently tied to the purpose of ES funding, ES funding is not being "put to the highest and best use," the funds should be put to better unspecified uses like deficit reduction, ED's original extension approvals are suspect, and Plaintiffs are requesting funds too quickly in the wake of the Court's PI Order. *Id.* at 2-4.

Defendants' new explanations fare no better than before; they are not remotely "reasonable" and contravene Congress's intent in enacting the appropriating legislation. And as before, Defendants fail to account for Plaintiffs' significant reliance interests in ED's prior extension approvals for continued access to these critical funds; they merely assert in conclusory fashion that "no valid reliance interests exist" because "the extensions previously granted" could

---

[1] The May 11 Rescission Letter is attached as Exhibit A to the Affirmation of Stephen C. Thompson, dated May 14, 2025 ("Thompson Aff.").

be withdrawn by ED "in its discretion at any time," *id*. at 4—the same argument the Court has already soundly rejected.

Plaintiffs are highly likely to succeed in proving that Defendants' second attempt to rescind the extensions of Plaintiffs' liquidation periods is as equally unlawful as their first attempt. Moreover, given that the Court has already determined Plaintiffs will suffer irreparable harm if they are blocked from accessing their awarded ES funds and that the balance of equities and public interest weigh in Plaintiffs' favor, those rulings are law of the case on this motion. The Court should immediately issue an *ex parte* temporary restraining order ("TRO") to maintain the status quo pending an expedited hearing on whether to issue a preliminary injunction ("PI") to enjoin enforcement of the May 11 Rescission Letter pending resolution of this action.

## PROCEDURAL HISTORY[2]

### A.  ED'S PRIOR EXTENSION APPROVALS

From 2020 to 2021, Congress enacted numerous major appropriations laws to, among other things, provide ES funding to Plaintiffs to bolster the health (both physical and mental) and education of students across the country during and after the COVID-19 pandemic. The primary appropriations law at issue here is the American Rescue Plan Act of 2021 ("ARP"), Pub. L. No. 117-2 (2021), enacted in March 2021. Following these appropriations, Plaintiffs' state education agencies ("SEAs") submitted grant applications for ES funding that included a description of the types of projects for which the funds would be used, *see* May 6, 2025 Transcript ("Tr.") at 26:1-11, attached as Exhibit B to the Thompson Aff., resulting in awards to Plaintiffs totaling over $50 billion, Compl. ¶46 (chart). Under applicable regulations, including the "Tydings amendment,"

---

[2] Plaintiffs incorporate by reference the prior declarations submitted in support of their prior Motion for Preliminary Injunction (ECF Nos. 12-28) and cite to those declarations using the citation format previously defined, *see* ECF No. 11-1 (Ex. A - Table of Supporting Declarations).

Section 421(b) of the General Educational Provisions Act, codified at 20 U.S.C. §1225(b), Plaintiffs had until January 28, 2025, to liquidate their ARP ES funds obligated under contracts entered into on or prior to September 30, 2024. *See* 2 C.F.R. §200.344(c) ("The recipient must liquidate all financial obligations incurred under the Federal award no later than 120 calendar days after the conclusion of the period of performance.").

Beginning in September 2023, and in response to Congress's urging, ED solicited extension requests from SEAs in accordance with ED's discretionary authority to grant extensions of the period within which Plaintiffs can draw down awarded funds (the "liquidation period") under 2 C.F.R. §200.344. *See* Compl. ¶¶41-43; Senate Report 118-84, Committee on Appropriations 253 (July 27, 2023) (encouraging ED to extend liquidation periods through a process imposing minimal burden on recipients), available at https://perma.cc/BGA9-XFBP. Each Plaintiff submitted to ED a form (provided by ED) detailing unliquidated grant amounts already obligated as of September 30, 2024; what subrecipients (*i.e.*, particular schools or contractors) they would fund; how the funds would be used; and the reason(s) for the extension request.[3] ED granted each State's extension request, based on specific findings that the requesting State had submitted sufficient justification and documentation to warrant granting the extension and setting the new liquidation deadline to be March 2026,[4] with only one exception.[5] Accordingly, Plaintiffs

---

[3] *See, e.g.*, Coughlin-NY ¶37; Wright-MD ¶¶7–8; Rice-MI ¶¶9, 11; Bell-MA ¶¶7-8, 13-14; Seaton-IL ¶¶13,15; Stewart-DC ¶¶6-8; Chasse Johndro-ME, ¶4; Rowe-PA ¶¶8, 15, 24-25; Wetherell-OR ¶¶8-9, 12; Ehling-NJ ¶10; Pierson-CA ¶¶6, 7, 10; Portner-HI ¶7; *see also* Perkins-Cohen-MD ¶¶4–6.

[4] *See, e.g.*, Coughlin-NY ¶¶14, 20, 26, 36-38; Wright-MD ¶¶7–9; Rice-MI ¶¶11-13; Bell-MA ¶¶9, 15; Seaton-IL ¶¶14,16; Stewart-DC ¶¶6-8; Chasse Johndro-ME ¶5-6; Rowe-PA ¶¶8, 12; Wetherell-OR ¶¶8-9; Ehling-NJ ¶¶11–14; Padilla-NM ¶¶6, 13, 19; Portner-HI ¶8; Marten-DE ¶11.

[5] For California's EANS award, ED extended the liquidation period only through December 2025. Pierson-CA ¶6.

understood that they had until March 2026 to draw down on their ES funding for amounts paid under contracts entered into by September 30, 2024 (covering at least the 2024-2025 academic year), and their SEAs and local education agencies ("LEAs") relied on that understanding in creating budgets, hiring staff, undertaking facility upgrade projects—some of which are only partially completed—and planning programs and services for children and families.[6]

### B. THE MARCH 28 RESCISSION LETTER

ED abruptly changed course at 5:03pm ET on March 28, 2025, when ED's Office of Communications and Outreach sent a mass email to all "Chief State School Officers"—including each Plaintiff—attaching the March 28 Rescission Letter from Secretary McMahon. *See* Compl., Ex. A. The March 28 Rescission Letter stated that ED was "modifying the liquidation period to end on March 28, 2025, at 5:00pm ET" instead of one year later per the extension approvals, based on Defendants' conclusion that ED's prior extension approvals were suddenly "not justified." *Id*. at 1.

The rescission was not specific to any State's particularized extension request or the terms and conditions of their awards but instead was a categorical revocation of all previously granted extensions. By way of reasoning, Secretary McMahon offered only that "[e]xtending deadlines for COVID-related grants … years after the COVID pandemic [had already] ended is not consistent with [ED's] priorities and thus not a worthwhile exercise of its discretion." *Id*. The March 28 Rescission Letter also advised that ED found "any reliance interests developed" by ES funding

---

[6] *See, e.g*., Coughlin-NY ¶43; Slaga-AZ ¶¶10-15; Wright-MD ¶¶7–9; Rice-MI ¶21; Bell-MA ¶¶12, 18 (noting that Massachusetts was reassured as recently as February 12, 2025, that access to EANS and ESSER funds would be available through March 28, 2026); Seaton-IL ¶¶4, 23-24; Stewart-DC ¶¶6-8; 11-12; Rowe-PA ¶¶20, 22-28; Wetherell-OR ¶¶8-12, 21-22; Ehling-NJ ¶¶11–14; Padilla-NM ¶¶6, 17, 21; Pierson-CA ¶¶6-12; Portner-HI ¶8; Marten-DE ¶12; *see also* Perkins-Cohen-MD ¶¶5, 12–13.

recipients based on those prior extension approvals to be "minimal" and "unreasonable," stating that, because the extension approvals were a matter of agency discretion, ES funding recipients "could not rely on [ED] adhering to its original decision." *Id*.

As of March 28, 2025, Plaintiffs collectively had just over $1 billion in unliquidated ES funds remaining on their ESSER, HCY, and EANS grants that, until they received the March 28 Rescission Letter, they understood and believed they could access through March 2026.

### C. THE COURT'S MAY 6 PI ORDER

In response to the March 28 Rescission Letter, Plaintiffs commenced this action asserting that Defendants' conduct was arbitrary and capricious (Count I) and contrary to law (Count II) in violation of the APA. The day after filing the complaint, Plaintiffs moved for a preliminary injunction. The Court granted Plaintiffs' motion from the bench following oral argument on May 6, 2025, finding: (i) Plaintiffs demonstrated they have suffered, and will continue to suffer, irreparable harm as a result of ED's rescission that blocks them from accessing their funds through timely payment requests, *see* May 6, 2025 Transcript ("Tr.") at 45:46:5, attached as Exhibit B to the Thompson Aff.; (ii) Plaintiffs have a "strong" likelihood of success on the merits of their two APA claims, *id*. at 43:25-45:14, 48:12-13; and (iii) the balance of the equities and public interest weigh in Plaintiffs' favor, *id*. at 46:6-13. More specifically, the Court held Defendants' conduct violated the APA because "the reason proffered [in the March 28 Rescission Letter] was not a reasonable explanation" and "Congress intended that these funds remain available" and that ED "be liberal and flexible in making sure that these programs continued to be funded" without the imposition of "unreasonable obstacles in the way of state agencies looking to continue to fund those programs." *Id*. at 44:21-22, 45:9-14.

The Court preliminarily enjoined Defendants from enforcing the March 28 Rescission Letter and required Defendants to provide 14 days' notice if they seek again to modify Plaintiffs' liquidation periods. *See* PI Order.

### D.  THE MAY 11 RESCISSION LETTER

On May 11, 2025—a mere five days after the PI Order—ED issued a "Dear Colleague" letter to Plaintiffs' SEAs announcing that ED "is modifying the period to liquidate obligations under [ES funding] programs to terminate on May 24, 2025." May 11 Rescission Letter at 1. In addition to again asserting that the pandemic "concluded more than two years ago," *id*. at 2, Defendants proffered the following handful of patently insufficient and paper-thin purported "explanations" for ED's change in position:

- ES funds are being used for projects "less and less connected" to proper uses, despite ED's prior approval of the projects as part of the separate grant application and approval process, *id*.;

- ES funds have not been "put to the highest and best use" as evidenced by a National Assessment of Educational Progress study conducted in the first quarter of 2024— several months *prior to* the September 30, 2024, deadline for states to enter into contracts to incur obligations to be paid with ES funds, *id*. at 3;

- ES funds "would be more effectively devoted to other functions, including other Department initiatives or reduction of the exploding federal deficit," despite the inability of ED to redirect to other uses any unliquidated ES funds, *id*.;

- ED now has "serious questions about the verification process" it used when it previously approved Plaintiffs' extension requests, *id*., contrary to Defendants' counsel's concession during argument that he had "no reason to believe" that ED's prior extension approvals did not involve a "careful review," Tr. at 27:1-9; and

- The quickening pace of payment requests, especially "in the hours after the May 6 preliminary injunction" "justifies a more individualized review process," May 11 Rescission Letter at 3.

As detailed below, none of these purported "justifications" passes muster under the APA to satisfy the requirement under the change-in-position doctrine that Defendants offer a reasoned explanation for their about-face on the prior extension approvals.

## ARGUMENT

### I.    PLAINTIFFS ARE ENTITLED TO IMMEDIATE INJUNCTIVE RELIEF

A temporary restraining order or preliminary injunction is warranted where the moving party establishes that: (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(a), (b)(1). "Where, as here, the government is a party to the suit, the final two factors merge." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020); *see also Nnebe v. Daus*, 510 F. Supp. 3d 179, 189 (S.D.N.Y. 2020), *aff'd,* No. 21-170-cv, 2022 WL 1220204 (2d Cir. Apr. 26, 2022). In addition, the APA authorizes courts "to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The standard for a stay under 5 U.S.C. § 705 is the same as the standard for a TRO. *See New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 294 (S.D.N.Y. 2020); *Bauer v. DeVos*, 325 F. Supp. 3d 74, 104-05 (D.D.C. 2018).

Plaintiffs easily satisfy the standard. Plaintiffs have a high likelihood of success on the merits of their challenge to Defendants' new rescission under the APA for the same reasons the Court already determined they are likely to succeed on their APA challenges to the March 28 Rescission Letter. While Defendants have concocted a handful of new justifications for rescinding ED's prior extension approvals (in addition to rehashing their failed end-of-the-pandemic excuse), they still offer no reasoned explanation, let alone an explanation that is consistent with Congress' intent. Nor have they meaningfully considered or accounted for Plaintiffs' substantial reliance interests. With respect to the remaining irreparable harm and equities/public interest factors, no new analysis is needed; the Court's prior rulings in Plaintiffs' favor are law of the case.

### A. Plaintiffs Are Likely to Succeed on the Merits

#### 1. *Defendants' New Rescission Letter Constitutes Final Agency Action Subject to Judicial Review Under the APA*

Defendants' latest attempt through the May 11 Rescission Letter to terminate Plaintiffs' liquidation periods as of May 24, 2025, constitutes final agency action subject to review under the APA just like Defendants' prior attempt to terminate the liquidation periods under the March 28 Rescission Letter.

Final agency actions "mark the consummation of the agency's decisionmaking process" and are those "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation omitted). The Court previously ruled that the March 28 Rescission Letter was final agency action subject to review under the APA because it was "a decision . . . to rescind all extensions" with "no equivocation in that determination" that was "operable" without regard for the new process established by ED for project-specific extensions. Tr. at 44:10-17. The same analysis applies with the same result for the May 11 Rescission Letter.

Without equivocation, Defendants announce in the May 11 Rescission Letter that ED "*is* modifying" Plaintiffs' liquidation periods to "*terminate* on May 24, 2025." May 11 Rescission Letter at 1 (emphasis added). This decision is not subject to any further agency consideration; indeed, confirming the finality of the decision, ED instructs Plaintiffs in the letter "to wind down their existing obligations for work already completed." *Id.* For the same reason that the Court ruled the March 28 Rescission Letter was final agency action review under the APA, so too is the May 11 Rescission Letter.

### 2. *Defendants' Latest Change in Position Violates the APA*

The APA directs courts to set aside a final agency action that is not the product of "reasoned decisionmaking" and is "arbitrary and capricious." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020). The Court's review under this standard must ensure that the agency has provided a genuine justification that supports its actions. *Dep't of Homeland Sec.*, 969 F.3d at 81. The arbitrary and capricious standard "is not limited to formal rules or official policies and applies equally to practices implied from agency conduct." *Saget v. Trump*, 375 F. Supp. 3d 280, 355 (E.D.N.Y. 2019) (collecting cases).

Where, as here, the agency changes its position, the agency must "provide a reasoned explanation for the change," "display awareness that [they are] changing position," and consider "serious reliance interests." *Encino Motorcars, LLC v. Navarro*, 579 U. S. 211, 221–22 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U. S. 502, 515 (2009)). These requirements— applicable under the Supreme Court's "change-in-position doctrine"—are to ensure that an agency does "not mislead regulated entities." *Food & Drug Admin. v. Wages and White Lion Investments, L.L.C.*, 604 U.S. ___, 2025 WL 978101, at *13 (April 2, 2025). An agency changes its position when it acts inconsistently with an earlier position, performs a reversal of its former views as to the proper course, or disavows prior inconsistent agency action as no longer appropriate. *Id*. at *14.

Here, Plaintiffs will likely prevail on their claim that Defendants' newly announced blanket rescission of ED's prior extension approvals and determination that Plaintiffs' liquidation periods will terminate on May 24, 2025, is arbitrary and capricious (Complaint Count I) under the change-in-position doctrine.

At the outset, Defendants clearly and intentionally changed ED's position. *Wages and White Lion Investments*, 2025 WL 978101 at *13. In the May 11 Rescission Letter, ED

acknowledged that it is changing its mind about previously granted liquidation extensions. *See* May 11 Rescission Letter at 3 ("The Department recognizes that it previously determined that an extension was justified."). Despite this clear change in position, Defendants fail to provide a single reasoned explanation for their action among the numerous "justifications" laid out in the May 11 Rescission Letter, as detailed below.

  <u>***Justification No. 1: The Pandemic is Over.***</u> Defendants rehash the same argument made in the March 28 Recission Letter, stating that the extensions are no longer needed because "the pandemic concluded more than two years ago." *Id.* The Court should reject this justification as plainly unreasonable for the same reasons as before. *See* Tr. at 33:7–21, 44:18–45:21.

  <u>***Justification No. 2: Use of Funds Not Sufficiently Connected to Academic Services.***</u> Defendants vaguely suggest that "States have increasingly tapped [ES funds] in ways that are less and less connected to direct academic services to students and the ongoing educational harms caused by COVID," and provide a few alleged examples untethered to any particular Plaintiff or project. May 11 Rescission Letter at 2–3. This reasoning is, at best, misplaced, because it conflates initial approval of the grants with Plaintiffs' separate requests that time to liquidate the awarded funds be extended. As acknowledged by Defendants' counsel during the May 6 argument, "[t]here was an initial project approval" as part of the grant application process which included at least "a broad[] indication of the type of work" for which the funds would be used, and in some instances a more specific description of the projects. *See* Tr. at 26:1-11, 37:8–17. Plaintiffs' requests to extend the time to liquidate were subsequent to, and separate from, the initial grant applications that ED had previously approved when first awarding the ES funds. And, accordingly, the only issue before ED in connection with Plaintiffs' extension requests was simply whether Plaintiffs had sufficiently justified and documented the need for additional time to liquidate the funds for the

already approved projects. The relevant regulation, 2 C.F.R. § 200.344, does not give ED the authority to re-examine the underlying subject matter of a particular grant award—instead, it provides ED only with discretion to approve an extension or not.

In any event, ED's dismissive reference to several projects ignores the plain text of ARP and the purpose of the ES funds. For example, ED complains that funds are being used for "Social-Emotional Learning Hubs" and "an anti-oppression, anti-racism portal." May 11 Rescission Letter at 2. But Congress, in ARP, explicitly directed that ES funds be used, among other things, to "ensure that [evidence-based] interventions respond to students' academic, *social, and emotional needs"* and *"address the unique needs of ... racial and ethnic minorities*." Pub. L. 117-2, tit. II, sub. tit. A, §§ 2001(e)(1), 2001(e)(2)(F) (emphasis added); *see also* Seaton-IL ¶25(c) (describing Illinois's Social-Emotional Learning Hubs program). ED also criticizes the use of funds for "turf field," "window-replacement," and "playground renovations" projects. May 11 Rescission Letter at 2. But Congress also directed that ES funds be used for "[s]chool facility repairs and improvements to enable operation of schools to reduce risk of virus transmission and exposure to environmental health hazards, and to support student health needs." Pub. L. 117-2, tit. II, sub. tit. A, § 2001(e)(2)(O). Defendants cannot reasonably argue that providing safe outdoor recreation opportunities, addressing critical school infrastructure like functioning windows, and otherwise funding projects that meet the social and emotional needs of students do not meet the requirements of ARP.

**_Justification No. 3: Funds Not Put to Their Highest and Best Use._** Defendants point to scores published by the National Assessment of Educational Progress ("NAEP") showing fourth and eighth grade students "saw a significant decrease in average reading scores" and "eighth graders' mathematics scores remained stagnant." May 11 Rescission Letter at 3. From these scores,

Defendants conclude that the ES funds "have not been put to their highest and best use." *Id*. As an initial matter, Defendants are again improperly attempting to second-guess Congress' policy choice to earmark ES funding for the purposes enumerated in the appropriating legislation. In any event, Defendants' reliance on the NAEP scores as an indication that the program funds awarded under ARP have been ineffective to ameliorate the effects of the pandemic is completely unreasonable.

The NAEP scores Defendants reference are the results from the NAEP 2024 mathematics and reading assessments at grades 4 and 8, commonly known as "The Nation's Report Card," which are published online at https://www.nationsreportcard.gov/. Notably, NAEP administered the 2024 study in selected schools countrywide *between January 29 and March 8, 2024*. *See* https://www.nysed.gov/state-assessment/national-assessment-educational-progress (noting when NAEP study will be administered). That is more than six months *before* the September 30, 2024, deadline Plaintiffs had to enter into contracts obligating ARP program funds, *see* May 11 Rescission Letter at 2, and long before the ARP-funded projects for the 2024-25 academic year were implemented. An assessment of student performance conducted in the first quarter of 2024 cannot possibly indicate the effectiveness of projects implemented during the 2024-25 academic year that starts in the Fall of 2024. Nor can the assessment take into consideration the effects of contracts entered into between March and September 2024. Based purely on the timing of the NAEP study, it is unreasonable for Defendants to draw any conclusions from the study results about whether ES funding for ARP projects is being "put to their highest and best use." *Id*. Rather, if any relevant conclusion can be drawn from the results, it is that more, not less, intervention through ES-funded projects is needed to help K-12 students catch up from lost instruction time.

*Justification No. 4: Funds Better Used for Other Initiatives.* Defendants claim, without evidence and without providing any examples, that ES funds "would be more effectively devoted to other functions, including other Department initiatives or reduction of the exploding federal deficit." May 11 Rescission Letter at 3. This is not a reasonable justification for Defendants' change in position because Defendants cannot second-guess Congress's decision on how ES funds may be used. ES funds are monies that have already been appropriated through COVID-19 legislation for the specific purposes enumerated by Congress for the exclusive benefit of state education agencies and their local school districts and that have already been awarded to Plaintiffs through ED's grant approvals. ED has no proprietary agency interest in these funds, nor can ED repurpose unliquidated funds for other agency uses; the funds may be used solely to reimburse states for qualifying obligations incurred by states on or before September 30, 2024. Because unliquidated ES funds cannot be used by ED for other agency initiatives, ED cannot modify Plaintiffs' liquidation periods based on its own perceived notion of how the funds can be better used. *See In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he President may not decline to follow a statutory mandate or prohibition simply because of policy objections."); *accord City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018); *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) ("When an executive agency administers a federal statute, the agency's power to act is 'authoritatively prescribed by Congress.'" (quoting *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013)).

*Justification No. 5: Alleged Problems with Original Extension Approvals.* Defendants now suggest that ED's original approvals of the liquidation period extensions were somehow suspect based solely on the purported "extreme length" of the extensions that were granted. May 11 Rescission Letter at 3. But Defendants, through their counsel, previously represented to this

Court there was "no reason to believe" ED had failed to conduct a careful review when approving Plaintiffs' prior extension requests. Tr. at 27:7–10. Defendants are bound by this judicial admission. *See Haywood v. Bureau of Immigration*, 372 Fed. App'x 122, 124 (2d Cir. 2010) (holding an admission of fact made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission).

In any event, Defendants do not provide any basis to support their assertion that the extensions granted here were "extreme" or give rise to a reasonable suspicion that ED acted without conducting a careful review. Rather, the prior extension approvals confirm ED acted with care to fulfill Congress's desire that ED exercise its "broad flexibility to extend the period for liquidating financial obligations" under ARP, Senate Report 118-84, Committee on Appropriations 253 (July 27, 2023), available at https://perma.cc/BGA9-XFBP, for a period of time that fell within ED's guidelines for seeking extensions.[7] Furthermore, Defendants ignore the extensive narratives and justifications that Plaintiffs provided to ED when seeking liquidation extensions, *see*, *e.g.*, Coughlin-NY Ex. D (ECF No. 26-4), which ED then approved after specifically finding the justifications and documentation to be "sufficient," *see*, *e.g.*, *id.*, Ex. B (ECF No. 26-2).

***Justification No. 6: "Accelerated" Draw Down Requests.*** Defendants claim that "an individualized review process" is necessary because, following this Court's grant of a preliminary injunction, Plaintiffs "accelerated" the pace at which they were submitting draw-down requests. May 11 Rescission Letter at 3. But Defendants studiously ignore the obvious explanation: a backlog created by Defendants' unlawful March 28 Rescission Letter coupled with Plaintiffs'

---

[7] *See* ED's February 23, 2024 FAQs for ARP Liquidation Extension Requests (noting SEAs may request an extension "up to 14 months past the close of the liquidation period"), available at https://www.ed.gov/sites/ed/files/2024/02/Technical-FAQs-for-ARP-HCY-Liquidation-Extensions.pdf.

justified fear that Defendants would once again attempt to cut off this critical funding stream. Defendants do not allege any impropriety whatsoever in the draw down requests that Plaintiffs have made thus far for purposes of conducting the required ministerial review, nor do they challenge the adequacy of the information that Plaintiffs have provided with their payment requests for such a review.

Furthermore, in addition to failing to provide any reasonable explanation for their change in position, Defendants also fail to account for the substantial reliance interests of Plaintiffs' SEAs and their local districts in having a liquidation period that extends through March 2026. Instead, Defendants assert that "no valid reliance interests exist" because Plaintiffs "knew that the extensions previously granted by the Department were subject to withdrawal by the agency in its discretion at any time." May 11 Rescission Letter at 4. This is the same argument Defendants made in opposing Plaintiffs' motion to enjoin the March 28 Rescission Letter which the Court soundly rejected. *See* Defendants' Opposition (ECF No. 63) at 13 ("The March 28 Letter also considered states' reliance interests and determined that they were 'minimal' owing to the recency of the extension approval and the Department's authority to reconsider its position."); Tr. at 46:3-5 ("There were substantial reliance rights that were established by the plaintiffs, which obviously were interrupted."). Their argument is no more persuasive now. As Plaintiffs established in support of their prior successful motion, Plaintiffs' SEAs and their local districts and nonpublic schools have created budgets, hired staff, offered services to families and children, commenced infrastructure improvement projects, and developed operating plans in reliance on the fact that the liquidation period extends through March 2026.[8] And as Plaintiffs previously pointed out, if it

---

[8] Coughlin-NY ¶42-57; Slaga-AZ ¶¶10-15, 27; Wright-MD ¶¶9; Perkins-Cohen-MD ¶¶5, 12–15; Rice-MI ¶21; Seaton-IL ¶¶23, 25; Stewart-DC ¶¶11-12; Rowe-PA ¶24; Wetherell-OR ¶¶21-22; Ehling-NJ ¶¶18, 20; Padilla-NM ¶10; Pierson-CA ¶¶14-16; Marten-DE ¶14.

were true that Plaintiffs could not rely on extensions "subject to withdrawal by the agency in its discretion at any time," May 11 Rescission Letter at 4, then a regulated entity could never have reliance interests in any agency determination. Such a result cannot be squared with the change-in-position doctrine or settled law requiring an agency to "take[] into account" the "serious reliance interests" of regulated entities when changing positions. *Regents,* 591 U.S. at 30 (internal quotation marks and citation omitted); *see also Encino Motorcars*, 579 U. S. at 221–22 (agency must consider regulated entity's "serious reliance interests"); *Fox Television Stations*, 556 U.S. at 515 (it "would be arbitrary or capricious to ignore" when a "prior policy has engendered serious reliance interests").

Finally, Plaintiffs will also likely succeed on their claim that Defendants' May 11 rescission is contrary to law (Complaint Count II) for the same reasons that the Court previously held their March 28 rescission was contrary to law: "Congress intended that these funds remain available. Congress intended that the Department of Education be liberal and flexible in making sure that these programs continued to be funded, and that the Department of Education not impose unreasonable obstacles in the way of state agencies looking to continue to fund those programs." Tr. at 45:9-14. The Court was persuaded by Plaintiffs' argument that where Congress intended to limit programs or appropriations based on the end of the pandemic, it did so directly by legislation. *See, e.g.*, ARP §9401 ("during the emergency period . . . and the 1-year period immediately following the end of such emergency period"); *id*. §9811(hh) ("ends on the last day of the first quarter that begins one year after the last day of the emergency period"); CARES Act, Pub. L. 116-136, §1109(h) (Mar. 27, 2020) ("until the date on which the national emergency . . . expires").

### B.  The Court's Prior Rulings Against Defendants on the Irreparable Harm and Equities/Public Interest Factors are Law of the Case

The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (emphasis added) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002));*Garland v. City of New York*, 665 F. Supp. 3d 295, 304 (E.D.N.Y. 2023) (same), *aff'd sub nom.*, *Garland v. New York City Fire Dep't*, No. 23-663, 2024 WL 445001 (2d Cir. Feb. 6, 2024), *cert. denied*, 145 S. Ct. 266 (2024). A court may depart from the law of the case only for "cogent" or "compelling" reasons, including an intervening change in law, availability of new evidence, or "the need to correct a clear error or prevent manifest injustice." *Quintieri,* 306 F.3d at 1230; *see also Johnson*, 564 F.3d at 99–100.

There are no "cogent" or "compelling" reasons here for the Court to depart from the law of the case on the irreparable harm suffered by Plaintiffs or the balance of equities and public interest weighing in Plaintiffs' favor, as determined by the Court on Plaintiffs' prior PI motion. Tr. at 45:14-16 ("As a result of the Department's actions, the plaintiffs have established irreparable harm."), Tr. at 46:6-7 ("the public interest and the balance of hardships here weigh clearly in favor of the plaintiffs"). The Court's prior rulings on these factors rest on facts that have not changed. The Court found Plaintiffs suffer irreparable harm from the termination of their liquidation periods based on "any number of declarations that have been submitted that talk about the disruption that has been caused by the March 28 letter—programs have been halted, staff has been laid off, infrastructure projects that were begun had been halted midstream, causing unusable locations within schools." *Id*. at 45:16-21. And the Court determined the balance of equities and public interest tip in favor of Plaintiffs because their SEAs "have had to disrupt the provision of

17

educational services to schoolchildren" and "have had to halt infrastructure projects midstream because of the Department of Education's determination" *Id*. at 46:7-11. As before, Defendants want to block Plaintiffs' access to their ES funds by rescinding ED's prior approvals and modifying Plaintiffs' liquidation periods to expire long before they are due to expire under the prior extension approvals. That they are seeking to do so based on new and different "justifications" does not make the harm Plaintiffs will incur any less irreparable than before or shift the balance of equities and public interest in Defendants' favor.

## II.    THE COURT SHOULD DIRECT DEFENDANTS TO PROCESS PLAINTIFFS' PENDING PAYMENT REQUESTS WITHOUT DELAY

Under the PI Order, ED is required to process Plaintiffs' pending payment requests for ES funding under the ministerial review procedure applicable to requests submitted within Plaintiffs' liquidation periods, and not review "specific projects at a closer level" as Defendants seek to do under their alternative procedure that forces Plaintiffs to apply anew for project-specific extensions. Tr. at 37:21-24; *see also id.* at 6:19-7:6. But ED is not processing Plaintiffs' timely submitted payment requests. For example, New York submitted two payment requests totaling approximately $26.6 million for ARP programs prior to receiving the March 28 Rescission Letter, but both of those requests remain outstanding. *See* Declaration of Christina Coughlin, sworn to on May 14, 2025, at ¶3. Rather, by refusing to process Plaintiffs' timely payment requests, Defendants are effectively granting themselves the stay of the preliminary injunction that they requested and that the Court denied at the May 6 hearing. Tr. at 49:15-16 ("I will not be staying the implementation of the preliminary injunction.").

Based on Defendants' intransigence in the face of the PI Order requiring ED to process outstanding payment requests as timely submitted, subject only to a cursory ministerial review, the Court should direct Defendants to process Plaintiffs' payment requests *without delay* and to submit

a status report within one week listing for each Plaintiff the requests that remain outstanding, along with the amount of each request, the date submitted, and the anticipated date it will be processed. *Cf. New York v. Trump*, No. 25-CV-39, 2025 WL 1009025, at *5 (D.R.I. Apr. 4, 2025) (holding that FEMA's "manual review process impos[ing] an indefinite pause on the disbursement of federal funds to the States" violated the court's preliminary injunction order enjoining the agency from impeding the disbursement of appropriated federal funds), reconsideration denied, No. 1:25-CV-39, 2025 WL 1098966 (D.R.I. Apr. 14, 2025).

## III.    THE COURT SHOULD NOT REQUIRE A BOND

The Court is "'vested with wide discretion'" in determining what amount of security, if any, is appropriate under Federal Rule of Civil Procedure 65(c). *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)).

The Court should exercise its discretion to dispense with requiring Plaintiffs to post a bond for the same reasons the Court did not require Plaintiffs to post a bond when issuing the PI Order— Plaintiffs have shown a "greater than usual" likelihood of success on the merits and this case involves the "enforcement of public interest arising out of a comprehensive federal health and welfare statute." Tr. at 48:6-16; *see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc*., 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010); *Maine v. United States Dep't of Agriculture*, No. 25-cv-00131, 2025 WL 1088946, at *30 (D. Me. Apr. 11, 2025) (finding the need for a "substantial bond" is minimized where a plaintiff's "likelihood of success on the merits of the claims at issue is extraordinarily high"); *Pharm. Soc'y of State of New York, Inc. v. New York Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995) (holding no bond required for case involving a comprehensive federal health and welfare statute).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an *ex parte* TRO immediately enjoining the enforcement of Defendants' May 11 Rescission Letter, schedule a PI hearing on an expedited basis, and grant such other relief as the Court deems necessary and proper.

Dated: New York, New York
      May 14, 2025

                                  Respectfully submitted,

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By: */s Andrew Amer*
Andrew Amer
  *Special Counsel*
Molly Thomas-Jensen
  *Special Counsel*
Rabia Muqaddam
  *Special Counsel for Federal Initiatives*
Stephen C. Thompson
  *Special Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*

**KRISTIN K. MAYES**
ATTORNEY GENERAL OF ARIZONA

By: */s/ Alexa Salas*
Alexa Salas*
  *Assistant Attorney General*
Lauren Watford*
  *Assistant Attorney General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Alexa.Salas@azag.gov
Lauren.Watford@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

ROB BONTA
ATTORNEY GENERAL OF CALIFORNIA

By:   /s/ Maureen C. Onyeagbako
Maureen C. Onyeagbako*
   Supervising Deputy Attorney General
José Pablo Galán de la Cruz**
   Deputy Attorney General
Cheryl L. Feiner**
   Senior Assistant Attorney General
California Attorney General's Office
1300 I Street, Ste. 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 210-7324
Email:  Maureen.Onyeagbako@doj.ca.gov
        Pablo.Galan@doj.ca.gov
        Cheryl.Feiner@doj.ca.gov

Counsel for Plaintiff State of California


BRIAN L. SCHWALB
ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA

By: /s/ Andrew Mendrala
Andrew Mendrala**
   Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the
District of Columbia
400 Sixth Street, NW Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

Counsel for the District of Columbia


KATHLEEN JENNINGS
ATTORNEY GENERAL OF THE STATE OF DELAWARE

By: /s/ Vanessa L. Kassab
Ian Liston
   Director of Impact Litigation
Vanessa L. Kassab
   Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

Counsel for the State of Delaware


ANNE E. LOPEZ
ATTORNEY GENERAL FOR THE STATE OF HAWAIʻI

By: /s/ Kalikoʻonālani D. Fernandes
David D. Day*
   Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
   Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

Counsel for the State of Hawaiʻi

**AARON M. FREY**
ATTORNEY GENERAL FOR THE STATE OF
MAINE

By:/s/ Sarah A. Forster*
Sarah A. Forster*
  *Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145
Sarah.Forster@maine.gov

*Counsel for the State of Maine*


**ANTHONY G. BROWN**
ATTORNEY GENERAL FOR THE STATE OF
MARYLAND

By: /s/ Keith M. Jamieson
Elliott Schoen*
  *Principal Counsel*
  *Assistant Attorney General*
Alan J. Dunklow*
  *Deputy Principal Counsel*
  *Assistant Attorney General*
Maryland State Department of Education
Keith M. Jamieson*
  *Assistant Attorney General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202
(410) 576-6960
kjamieson@oag.state.md.us

*Counsel for the State of Maryland*


**KWAME RAOUL**
ATTORNEY GENERAL FOR THE STATE OF
ILLINOIS

By: /s/ Elena S. Meth
Cara Hendrickson*
  *Assistant Chief Deputy Attorney General*
Elena S. Meth*
  *Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(773) 835-0182
Cara.Hendrickson@ilag.gov
Elena.Meth@ilag.gov

*Counsel for the State of Illinois*


**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz**
  *State Solicitor*
Katherine Dirks
  *Chief State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2427
david.kravitz@mass.gov

*Counsel for the
  Commonwealth of Massachusetts*

22

**DANA NESSEL**
ATTORNEY GENERAL OF MICHIGAN

By: */s/ Neil Giovanatti*
Neil Giovanatti
BreAnna Listermann*
  *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ListermannB@michigan.gov

*Counsel for the People of the State of Michigan*

**MATTHEW J. PLATKIN**
  ATTORNEY GENERAL OF NEW JERSEY

*/s/ Lauren E. Van Driesen*
Lauren E. Van Driesen
Jessica L. Palmer
Justine Longa**
  *Deputy Attorneys General*
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Lauren.VanDriesen@law.njoag.gov
Jessica.Palmer@law.njoag.gov
Justine.Longa@law.njoag.gov

*Counsel for the State of New Jersey*

**DAN RAYFIELD**
ATTORNEY GENERAL FOR THE STATE OF OREGON

By:  */s/ Sara Van Loh*
Sara Van Loh OSB #044398*
  *Senior Assistant Attorney General*
100 SW Market Street
Portland, Oregon 97201
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov

*Attorneys for the State of Oregon*

**KEITH ELLISON**
ATTORNEY GENERAL FOR THE STATE OF MINNESOTA

By*: /s/ Liz Kramer*
Liz Kramer*
  *Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA

By: */s/ Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
  *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**RAÚL TORREZ**
ATTORNEY GENERAL OF THE STATE OF NEW MEXICO

*/s/ Anjana Samant*
Anjana Samant**
  *Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM  87501
asamant@nmdoj.gov
(505) 270-4332

*Counsel for the State of New Mexico*

23

**JENNIFER C. SELBER**
  *General Counsel*
Michael J. Fischer
  *Executive Deputy General Counsel*

By:*/s/ Thomas P. Howell*
Thomas P. Howell*
  *Deputy General Counsel*
Governor's Office of General Counsel
30 N. 3rd Street, Suite 200
Harrisburg, PA 17101
(717) 460-6786
thowell@pa.gov

*Counsel for Governor Josh Shapiro,*
*Commonwealth of Pennsylvania*

\* Admitted Pro Hac Vice
\*\* Pending Pro Hac Vice applications filed/to
be filed

**CERTIFICATION**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 6,083 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
     May 14, 2025

LETITIA JAMES
Attorney General of the State of New York

By: /s Andrew Amer
Andrew Amer
  Special Counsel
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov