UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, *et al.,*

                    Plaintiffs,

        - against –                                    **No. 25 Civ. 2990 (ER)**

UNITED STATES DEPARTMENT OF
EDUCATION*, et al.,*

                    Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**


JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel:    (212) 637-2761/2741
*Attorney for Defendants*

CHRISTOPHER K. CONNOLLY
DANA WALSH KUMAR
*Assistant United States Attorneys*
    – Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND .........................................................................................................2

    I.    The Education Stabilization Fund.........................................................2

    II.   The March 28 and April 3 Letters........................................................3

    III.  Plaintiffs' First Motion for a Preliminary Injunction and the Court's Order................5

    IV.  The May 11 Letter and Plaintiffs' Second Motion for a Preliminary Injunction ..........6

STANDARD OF REVIEW .............................................................................................8

ARGUMENT ..............................................................................................................9

    I.    The Court Lacks Jurisdiction .............................................................9

    II.   The Department Will Suffer Irreparable Harm if the Court Grants Plaintiffs' Motion.........................................................................................16

    III.  A Preliminary Injunction Would Not Serve the Public Interest .................................17

    IV.  Plaintiffs Do Not Demonstrate a Likelihood of Success on the Merits......................18

CONCLUSION...........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Gardner,*
   387 U.S. 136 (1967) ................................................................................. 20

*A.H. by & through Hester v. French,*
   985 F.3d 165 (2d Cir. 2021) ...................................................................... 10

*Amoco Prod. Co. v. Hodel,*
   815 F.2d 352 (5th Cir. 1987) ..................................................................... 11

*Bennett v. Spear,*
   520 U.S. 154 (1997) .................................................................................. 20

*Bionpharma Inc. v. CoreRx, Inc.,*
   582 F. Supp. 3d 167 (S.D.N.Y. 2022) ....................................................... 19

*Bowen v. Massachusetts,*
   487 U.S 879 (1988). ........................................................................... passim

*Brighton Village Associates v. United States,*
   52 F.3d 1056 (Fed. Cir. 1995) ................................................................... 14

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) .................................................................................. 21

*Coggeshall Dev. Corp. v. Diamond,*
   884 F.2d 1 (1st Cir. 1989) ........................................................... 11, 14, 15

*Consolidated Edison Co. of New York v. U.S., Dep't of Energy,*
   247 F.3d 1378 (Fed. Cir. 2001) ................................................................. 16

*Dalton v. Specter,*
   511 U.S. 462 (1994) .................................................................................. 20

*Davis v. Pension Ben. Guar. Corp.,*
   571 F.3d 1288 (D.C. Cir. 2009) ................................................................ 19

*Dep't of Educ. v. California,*
   145 S. Ct. 966 (2025) ................................................................................ 12

*Diaz v. Johnson,*
   No. 19-1501, 2020 WL 9437887 (1st Cir. Nov. 12, 2020) ....................... 11

*FAA v. Cooper*,
   566 U.S. 284 (2012) ................................................................................ 10

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ................................................................... 17

*FDA v. Wages & White Lion Investments, L.L.C.*,
   145 S. Ct. 898 (2025) .............................................................................. 21

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005) ................................................................... 17

*FTC v. Standard Oil Co. of California*,
   449 U.S. 232 (1980) ................................................................................ 20

*Glidden Co. v. Zdanok*,
   370 U.S. 530 (1962) ................................................................................ 15

*Grand River Enterprises Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007) ................................................................ 9, 18

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ..................................................................... 12, 13, 14

*Ingersoll-Rand Co. v. United States*,
   780 F.2d 74 (D.C. Cir. 1985) ................................................................. 11

*Kakar v. USCIS*,
   29 F.4th 129 (2d Cir. 2022) ................................................................... 21

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ................................................................................ 15

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ............................................................... 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................. 21

*New York v. DHS*,
   969 F.3d 42 (2d Cir. 2020) ..................................................................... 17

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................ 18

*NRDC v. EPA*,
   658 F.3d 200 (2d Cir. 2011) ................................................................... 21

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) ................................................................ 18

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986) ........................................................... 15

*Students for Fair Admissions v. U.S. Military Academy at West Point*,
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) ................................................... 9

*U.S. Army Corps of Engineers v. Hawkes Co., Inc.*,
    578 U.S. 590 (2016) .............................................................................. 20

*United States v. Sherwood*,
    312 U.S. 584 (1941) .............................................................................. 10

*Winter v. NRDC*,
    555 U.S. 7 (2008) ................................................................................... 9

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025)……………………………12

**Regulations**

2 C.F.R. § 200.342 ....................................................................................... 5

2 C.F.R. § 200.344(c) ........................................................................... passim

34 C.F.R. Part 76 ......................................................................................... 4

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................... 24

**Statutes**

5 U.S.C. § 702 ...................................................................................... 11, 15

5 U.S.C. § 704 ................................................................................ 11, 16, 19

5 U.S.C. § 706(2)(A) .................................................................................. 20

20 U.S.C. § 1226a ....................................................................................... 23

28 U.S.C. § 1491(a)(1) ............................................................................... 15

Defendants the United States Department of Education ("ED" or the "Department") and Linda McMahon, in her official capacity as Secretary of Education (together, "Defendants"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the motion for a preliminary injunction filed by the Plaintiff States.

## PRELIMINARY STATEMENT

Under applicable statutes and regulations, the deadline to liquidate funds appropriated by Congress for COVID-relief funding to schools was in January 2025. Although the Department had previously granted fourteen-month extensions to liquidate funds, in March 2025, it changed its policy, and on March 28, 2025, rescinded those previously-granted blanket extensions. In announcing the policy change, the Department provided that states could still request liquidation extensions on a project-specific basis. On May 6, 2025, this Court enjoined the Department from implementing these new directives. Pursuant to the Court's Order, the Department reverted to its pre-March 28 process, has been reviewing requests submitted by Plaintiffs, and has disbursed millions of dollars. After the Court's May 6 Order, the States have submitted additional requests for hundreds of millions of dollars, which reflect a drastic increase over requests that had previously been submitted.

On May 11, 2025, as permitted by the Court's May 6 Order, the Department issued a letter to Plaintiffs explaining why it rescinded its previously-granted extensions and providing Plaintiffs fourteen days to submit liquidation requests relating to properly obligated funds, wind down contracts where necessary, and transition to the Department's project-specific process for requesting liquidation extensions. In response, the States filed the instant motion, not only seeking

that the Department be enjoined from implementing its new process for obtaining extensions, but also that the Department be ordered to promptly pay funds requested by the States.

The Court should not enter this second injunction. *First*, this Court lacks jurisdiction over Plaintiffs' claims because by seeking to compel payment, they sound in contract. The Supreme Court has recently held that the Department is likely to succeed in showing that the Court of Federal Claims is the only proper jurisdiction for similar claims. *Second*, Plaintiffs fail to show that they are entitled to preliminary relief. Plaintiffs have not shown irreparable harm; rather, it is the Department that will be irreparably harmed if the Court orders it to disburse funds that it will not be able to recover if it prevails in the litigation. For that reason, the public interest also favors denying Plaintiffs' motion. Finally, Plaintiffs have failed to establish that they are likely to succeed on the merits of their Administrative Procedure Act ("APA") claims.

Accordingly, Plaintiffs' second motion for a preliminary injunction should be denied.

## <u>BACKGROUND</u>

### I.    **The Education Stabilization Fund**

Defendants assume the Court's familiarity with the background of this case. Briefly, in 2020 and 2021, Congress enacted statutes to provide funding to support schools and students experiencing challenges stemming from the COVID-19 pandemic: the Coronavirus Aid, Relief, and Economic Security Act ("CARES"), Pub. L. No. 116-136 (2020), 134 Stat. 281; the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSA"), Pub. L. No. 116-260 (2020), 134 Stat. 1182; and the American Rescue Plan of 2021 ("ARP"), Pub. L. No. 117-2, 135 Stat. 4 (2021). Together, these statutes established the Education Stabilization Fund ("ESF") and the three ESF programs that are relevant here: (i) the Elementary and Secondary

School Emergency Relief ("ESSER") program; (ii) the Homeless Children and Youth ("HCY")

program; and (iii) the Emergency Assistance to Non-Public Schools ("EANS") program.

The Department, through its Office of Elementary and Secondary Education ("OESE"),

was tasked with administering the disbursement of these funds to state educational agencies

("SEAs") for the purpose of providing local education agencies ("LEAs") with the emergency

relief. *See* 34 C.F.R. Part 76.  Pursuant to the relevant statues, recipients of the ESSER, HCY, and

EANS funds appropriated through the ARP were required to obligate those funds by September

30, 2024.  Pursuant to applicable regulations, the recipients of these funds then had until January

28, 2025—120 calendar days "after the conclusion of the period of performance"—to liquidate all

financial obligations incurred.  2 C.F.R. § 200.344(c).  The Department possesses the discretionary

authority to extend this liquidation deadline "[w]hen justified."  2 C.F.R. § 200.344(c).  According

to the complaint, prior to March 28, 2025, the Plaintiff States received extensions to liquidate

EANS, ESSER, and/or HCY funds, which, in most instances relevant here, extended the

liquidation deadline to March 28, 2026.  Compl., ECF No. 1, ¶¶ 87-157.  The States allege that

they "were relying on the extension approvals permitting Plaintiffs to draw upon the ES funding

through the expiration of the extended liquidation periods in executing agreed-upon plans to

deliver services to students and engage in building projects aimed at combating the long-term

effects of the pandemic."  *Id.* ¶ 158.

## II.    The March 28 and April 3 Letters

On March 28, 2025, Secretary McMahon issued a letter to all state recipients of ES funding,

including Plaintiffs, advising them that the Department had modified the deadline to liquidate all

obligations under the ESF, including all programs funded by the CRRSA and ARP.  March 28 Ltr.

(ECF No. 1-1).  In the March 28 Letter, Secretary McMahon indicated that the Department had

modified the liquidation period to end on March 28, 2025, the date of the letter, rather than the previously extended deadline of March 28, 2026. *Id.* The letter explained that states "were entitled to the full award only if [they] liquidated all financial obligations within 120 days of the end of the period of performance," and that the "period to liquidate obligations for these Grant Awards [had] expired." *Id.* Secretary McMahon further noted that, because the COVID pandemic had ended, extending the deadlines for COVID-related grants "is not consistent with the Department's priorities and thus not a worthwhile exercise of its discretion" to extend liquidation deadlines. *Id.* But the letter also stated that "even though the COVID pandemic and the liquidation period under the applicable regulations [had] ended, the Department will consider an extension to [a state's] liquidation period on an individual project-specific basis." *Id.*

On April 3, 2025, Hayley B. Sanon, the Principal Deputy Assistant Secretary and Acting Assistant Secretary in OESE, issued a "Dear Colleague Letter" explaining that "even though the COVID pandemic and the liquidation period under the applicable regulations [had] ended, the Department will consider an extension to [a state's] liquidation period on an individual project-specific basis." Apr. 3 Ltr., *available at* https://www.ed.gov/media/document/dear-colleague-letter-follow-esf-funding-april-3-2025-109779.pdf (last visited May 29, 2025). The April 3 Letter identified information that states were required to submit to apply for project-specific extensions of the liquidation deadline and stated that the Department would "review each request as it is received and work to provide a response as quickly as possible." *Id.* The Department has since indicated that a "State agency whose project-specific request is denied may request an appeal of these decisions consistent with 2 C.F.R. § 200.342" within "30 calendar days from the receipt of a denial." U.S. Dep't of Education, Education Stabilization Fund Liquidation Extension, *available at* https://www.ed.gov/grants-and-programs/formula-grants/response-formula-grants/covid-19-

4

emergency-relief-grants/education-stabilization-fund-liquidation-extensions ("ESF Liquidation Extensions Website") (last visited May 29, 2025). According to the Department's website, as of May 9, 2025, 32 states and outlying areas have submitted over 250 project-specific extension requests, and the Department had reviewed and issued determinations for 129 project-specific requests. *Id.* Non-Plaintiff states continue to make requests through this process and the Department is adjudicating those requests. Declaration of Ruth E. Ryder, dated May 29, 2025 ("Ryder Decl.") ¶ 9.

### III.    Plaintiffs' First Motion for a Preliminary Injunction and the Court's Order

The Plaintiff States commenced this action on April 10, 2025, challenging the March 28 Letter's recission of the prior extensions for liquidating ES grant funds as both "arbitrary and capricious" and "contrary to law" under the APA. *See* Compl. ¶¶ 192-215. In their complaint, the States alleged that they have received ES funding grants and also received extensions of the liquidation deadline in connection with those grants. *See id.* ¶¶ 47-157. They further alleged that rescission of the prior extensions "is already having and will continue to have devastating effects" on state and local programs designed to address the impact of the COVID-19 pandemic. *See id.* ¶¶ 162-91.

Plaintiffs moved for a preliminary injunction on April 11, 2025, asserting that they were entitled to preliminary injunctive relief because they are likely to succeed on the merits of their claims that the Department's actions violate the APA, they would suffer irreparable harm absent an injunction, and the public interest and equities favored granting their motion.

On May 6, 2025, following oral argument, the Court granted Plaintiffs' motion and entered Plaintiffs' proposed preliminary injunction order. The Order enjoined the Department from "enforcing or implementing as against Plaintiffs during the pendency of this litigation or until

further order of the Court the directives in the March 28, 2025 letter from Education Secretary Linda McMahon" which "rescinded the prior approvals granted by the U.S. Department of Education ('ED') extending the periods of time for Plaintiffs to liquidate their obligations under the Education Stabilization Fund." Preliminary Injunction Order, ECF No. 77 (the "Order") ¶ 1. In addition, the Order enjoined the Department from "modifying ED's previously-approved periods for Plaintiffs to liquidate their obligations under the ESF without providing notice to Plaintiffs at least fourteen (14) days prior to the effective date of such modification." *Id.* ¶ 2.

### IV. The May 11 Letter and Plaintiffs' Second Motion for a Preliminary Injunction

Since May 6, 2025, the Department has complied with the terms of the Order and has been processing reimbursement requests submitted by the Plaintiff States (and by non-Plaintiff States on a project-specific basis). Ryder Decl. ¶¶ 9-10.

On May 11, 2025, the Department issued a new "Dear Colleague Letter" to the Plaintiff States, informing them of the Department's decision to modify the period to liquidate obligations under the ESF program to terminate on May 25, 2025, as permitted by Paragraph 2 of the Order. Thompson Aff. Ex. A, ECF No. 84-1 ("May 11 Ltr."). The May 11 Letter states that "[t]he amount of federal funds available under [the ESF] programs was unprecedented;" "[p]rior to the pandemic, the largest ED grant program in history had provided only $16.5 billion annually to all States and outlying areas." May 11 Ltr. 1-2. The letter also stated that the Department's prior extension of the relevant liquidation deadlines was also "unprecedented; the Department had never previously offered such a broad-based opportunity to all States to liquidate funds in a grant program for years after the original obligation period set by Congress." *Id.* 2.

Accordingly, the May 11 Letter explains that the Department is "exercising its discretionary authority [to terminate the prior extensions] under 2 CFR § 200.344(c)." *Id.* First, the letter

indicates that, "[i]n the time since the pandemic ended, States have increasingly tapped ESF funds in ways that are less and less connected to direct academic services to students and the ongoing educational harms caused by COVID." *Id.* Next, the letter explains that the Department has "revisited [its] threadbare determination" that prior extensions were warranted and "now concludes that the continued use of federal funds for COVID-related harms more than two years after the pandemic ended is unwarranted." *Id.* In particular, the letter notes "the extensions' extreme length: for the ARP Act, the extension was more than three times the length of the default period." *Id.*

As the May 11 Letter explains, the Department concluded that "[t]he most effective way to allay" its concerns regarding the propriety of prior extensions "is to run a new, individualized process that considers the unique circumstances of each grantee in light of their past performance, their intended use of the funds, and the lengthy period they have already enjoyed for liquidating the funds." *Id.* In support of that determination, it points to grantees' "rapid[]" draw-down of funds after having received extension requests: "These changes in grantee practices justifies a more individualized review process to determine how funds are being used and whether an extension is appropriate." *Id.*

In light of the Department's discretion in extending liquidation periods, and because states "have already enjoyed nearly twice" the time provided by regulation "to liquidate their funds," the May 11 Letter states that "no valid reliance interests exist" in the prior extensions. *Id.* 4. Nonetheless, the letter also explains that the Department has "properly accounted" for any reliance interests that do exist by providing the Plaintiff States with "14 days to liquidate expenses as they wind down their ECF-funded programs" by "seek[ing] reimbursement for authorized costs that they have already incurred and that are appropriately substantiated and otherwise justified." *Id.*

Further, the letter provides instructions for seeking project-specific extensions of the liquidation deadline. *Id.* 6-7.

In response to the May 11 Letter, on May 14, 2025, the States moved for an *ex parte* temporary restraining order ("TRO") and preliminary injunction enjoining the Department from implementing the May 11 Letter and directing the Department to "process Plaintiff's pending payment requests without delay." Plaintiffs' Brief in Support of Motion for Injunctive Relief, ECF No. 85 ("Pls.' Br.") at 18. The Court granted Plaintiffs' Motion for a TRO and temporarily enjoined the Department from "enforcing or implementing as against Plaintiffs the directives in the May 11 Rescission Letter pending the Court's decision on Plaintiffs' motion for a preliminary injunction." ECF No. 95 at 2.

## STANDARD OF REVIEW

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Military Academy at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see also Winter v. NRDC*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To demonstrate its entitlement to this "extraordinary and drastic remedy," *id.*, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, [] (3) public interest weighing in favor of granting the

injunction," and (4) "that the balance of equities tips in his or her favor," *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quotation marks and footnotes omitted).

<u>**ARGUMENT**</u>

Plaintiffs are not entitled to injunctive relief because this Court lacks jurisdiction to hear these claims. Moreover, Plaintiffs do not make a showing that they will be harmed irreparably absent an injunction, that the balance of equities and the public interest weighs in their favor, or that they are likely to succeed on the merits of their APA claims.

**I.   The Court Lacks Jurisdiction**

This Court lacks jurisdiction over Plaintiffs' claims for payment of money pursuant to the grants, which should be brought in the Court of Federal Claims. In their second motion for a preliminary injunction, Plaintiffs ask the Court to enjoin the Department from implementing the procedures set forth in the May 11 Letter and to direct the Department "to process Plaintiffs' outstanding and future requests for liquidation of Education Stabilization Funds without delay." It is now apparent that this is the relief that Plaintiffs are seeking—the Court-ordered payment of federal funds to Plaintiffs purportedly pursuant to grant agreements. Plaintiffs are thus not just objecting to the Department's rescission of the previously-granted liquidation extensions; they are seeking an order compelling grant payments from the Department and enjoining any withholding of funds—*i.e.*, to continue to pay money to the States under the grants.

This Court lacks jurisdiction over these claims. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). To sue a federal agency and its officials, a plaintiff must therefore identify an express waiver in the text of a federal law and show that its claim falls within the waiver's scope. *See FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("a waiver of sovereign immunity must be 'unequivocally

expressed' in statutory text").  In this case, Plaintiffs seek to rely on the limited waiver of sovereign immunity contained in the APA.  *First*, the waiver does not apply to claims seeking "money damages."  5 U.S.C. § 702.  *Second*, the waiver does not apply where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*  *Third*, the waiver does not apply to claims for which another court could provide an "adequate remedy."  5 U.S.C. § 704.  Plaintiffs, by asserting that the Department be compelled to conduct a "cursory ministerial review" that would require the payment of funds to the States, seek money damages.  *See* Transcript of May 6, 2025 Oral Argument ("Tr.") at 10.  Under the Tucker Act, another court—the Court of Federal Claims—has jurisdiction over Plaintiffs' claims.

The fact that the complaint seeks only declaratory and injunctive relief "does not decide the issue" of whether an action, at its core, seeks money damages. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79 (D.C. Cir. 1985); *see also Bowen v. Massachusetts*, 487 U.S. 879, 916 (1988) (Scalia, J., dissenting) ("district court jurisdiction is not established merely because a suit fails to pray for a money judgment"). A plaintiff may not avoid the APA's carve-out for money damages by "couch[ing] [its] claims in the language of equitable and declaratory relief," when the alleged injury "is pecuniary in nature and at bottom what [it] seeks is monetary relief based on . . . a contract." *Diaz v. Johnson*, No. 19-1501, 2020 WL 9437887, at *2 (1st Cir. Nov. 12, 2020). To determine whether an action seeks money damages, courts must instead look to the substance of the complaint, "irrespective of how it is packaged." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989); *see also Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 361 (5th Cir. 1987) ("one of the few clearly established principles is that the substance of the pleadings must prevail over their form").

The substance of Plaintiffs' allegations makes clear that they seek money damages. "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted). More specifically, "[a] claim for money due and owing under a contract is 'quintessentially an action at law.'" *Id.* (citation omitted). Here, Plaintiffs are now asking the Court for two forms of relief: to enjoin the Department from implementing the directives in the May 11 letter *and* to compel the Department to "process Plaintiffs' outstanding and future requests for liquidation of Education Stabilization Funds without delay." Pls.' Proposed Order, ECF No. 87. Both of these requested forms of relief amount to claims for the payment of money, purportedly pursuant to grant agreements, by the Department. With respect to Plaintiffs' request to enjoin the May 11 letter, which would have directed the Plaintiff States to the "project-specific" extension request process after May 25, Plaintiffs have made clear that they expect the Department to revert to its prior, pre-March 28, 2025 process by which it granted all of the States' payment requests upon only "cursory" or "ministerial" review. Tr. at 10. Plaintiffs are thus, in sum and substance, seeking an order compelling grant payments from the Department and enjoining any withholding of funds.

And this is precisely what the Supreme Court has recently ruled on in a similar case. The Court acknowledged that an APA claim "is not barred by the possibility" that the requested relief "may result in the disbursement of funds." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (citing *Bowen*, 487 U.S. at 910). But it emphasized that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the

lines of what" Plaintiffs request here. *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The Court therefore found that "the Government is likely to succeed in showing" that this Court "lack[s] jurisdiction" over that case. *Id.* The D.C. Circuit recently came to the same conclusion in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), in which it granted a stay of district court preliminary injunctions pending appeal in cases challenging, among other things, the termination of grants an agency. Similarly, this Court lacks jurisdiction over Plaintiffs' claims, which seek to compel payment related to grant funding that is akin to seeking contractual relief.

Nor does *Bowen v. Massachusetts* establish jurisdiction over Plaintiffs' claims. In *Bowen*, Massachusetts sued the Secretary of Health and Human Services to enforce a provision of the Medicaid Act that required the payment of certain amounts to participating states. 487 U.S. at 887. Massachusetts provided services to mentally challenged individuals that involved training by State Department of Education employees, but the Secretary determined that the Medicaid program only covered such services if provided by State Department of Mental Health employees. *Id.* at 886. The Secretary therefore "disallowed" the expenditures for these services and refused to provide reimbursement for them. *Id.* at 887. Massachusetts then sued in district court under the APA, seeking injunctive relief requiring the Secretary to reimburse the disputed expenditures. *Id.*

The Supreme Court held that the APA's waiver of immunity applied because the lawsuit was an action seeking relief other than money damages. *Id.* at 893. In so doing, the Court defined the term "money damages" as compensation for a loss—as opposed to specific relief enforcing a statutory mandate moving forward. *Id.* at 895. The Court held that "[t]he State's suit to enforce § 1396b(a) of the Medicaid Act . . . [was] not a suit seeking money in *compensation* for the damage

sustained by the failure of the Federal Government to pay," but, rather, "a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900.

*Bowen* is distinguishable from this action, which is not seeking to enforce some statutory mandate; instead, Plaintiffs seek the payment of money the Department is allegedly withholding. Indeed, the only regulation relevant here is 2 C.F.R. § 200.344(c), which explicitly gives the Department discretion to grant liquidation extensions beyond the 120-day statutorily allowed period. At bottom, Plaintiffs are asking the Court to compel the payment of funds pursuant to grants (contracts) that were previously extended. But "*Bowen* has no bearing on the unavailability of an injunction to enforce a contractual obligation to pay money past due." *Great-West*, 534 U.S. at 212. Again, "[a] claim for money due and owing under a contract is 'quintessentially an action at law.'" *Id.* at 210 (citation omitted). Thus, courts "have consistently read *Bowen* to reinforce the jurisdictional role of the Court of Federal Claims in resolving *contract disputes* outside the complex Medicaid arena." *Brighton Village Associates v. United States*, 52 F.3d 1056, 1059 n.3 (Fed. Cir. 1995) (emphasis added); *see also Coggeshall*, 884 F.2d at 5 ("*Bowen* was not an action for breach of contract").

Moreover, in *Bowen*, the Supreme Court explained that setting aside the Secretary's disallowance decision would not "properly [be] characterized as an award of 'damages'" because disallowance decisions under the Medicaid statute involve "an adjustment—and, indeed, usually a relatively minor one—in the size of the federal grant" paid on an "open account" in quarterly installments. 487 U.S. at 893. Thus, the requested relief in *Bowen* sought "an injunction to correct the method of calculating payments going forward." *Great-West*, 534 U.S. at 212. Here, by contrast, Plaintiffs have made clear that they are not only challenging the rescission of a deadline

to submit payment requests; they seek to have the Court order the Department to make payments to the States.

In addition to excluding claims for money damages, the APA's waiver of immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (citing 5 U.S.C. § 702). This carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

Another statute—the Tucker Act—grants consent to suits founded upon contracts with the United States. 28 U.S.C. § 1491(a)(1). And it has long been accepted that the Tucker Act authorizes the Court of Federal Claims "only to award damages, not specific relief," such as specific performance of a contract. *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962). Indeed, no court has "the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall*, 884 F.2d at 3. The D.C. Circuit has observed that it "know[s] of no case in which a court has asserted jurisdiction either to grant a declaration that the United States was in breach of its contractual obligations or to issue an injunction compelling the United States to fulfill its contractual obligations." *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986).

Notably, Congress added the limited waiver of sovereign immunity to the APA in 1976. Pub. L. 94-574, 90 Stat. 2721, 2721 (1976). And the legislative history of this amendment confirms that it was not intended to undo the Tucker Act's implied prohibition on granting specific performance:

> [T]he amendment to 5 U.S.C. section 702 is not intended to permit suit in circumstances where statutes forbid or limit the relief sought . . . For example, in the [Tucker Act], Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. *The measure is intended to foreclose specific performance of government contracts*. In the terms of the proviso, a statute granting consent to suit, *i.e.,* the Tucker Act, "impliedly forbids" relief other than the

> remedy provided by the Act. Thus, the partial abolition of sovereign immunity brought about by this bill *does not change existing limitations on specific relief*, if any, derived from statutes dealing with such matters as government contracts.

H.R. Rep. No. 94-1656, at 12-13 (1976) (emphasis added).

Whether the Tucker Act impliedly forbids granting specific performance turns on whether the action sounds in contract. In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act, courts have looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Here, both the source of the rights asserted (to receive funds pursuant to grant programs) and the type of relief sought (for the Department to disburse funds promptly) confirm that Plaintiffs' lawsuit sounds in contract.

This Court also lacks jurisdiction over Plaintiffs' complaint because a money judgment in the Court of Federal Claims would provide an adequate remedy for the injuries of which Plaintiffs complain. The APA provides for judicial review only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. "In other words, a claimant with an alternative adequate remedy in another court, such as the Court of Federal Claims, cannot seek review of agency action in a district court under the APA." *Consolidated Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1383 (Fed. Cir. 2001).

Moreover, even if this Court finds it does have jurisdiction over these claims, it should not grant the States' request to direct the Department to make specific payments because the Department is continuing to review submissions and issue payments and the Court should allow the Department to continue that process. Ryder Decl. ¶¶ 9-10. As explained in more detail below, Plaintiffs have not established irreparable harm or a likelihood of success on the merits. Because the Department continues to review requests and disburse payments, and will continue to do so

15

pursuant to the project-specific process set forth in the May 11 Letter once the current TRO expires, the Court should not grant preliminary relief at this juncture.

## II.    The Department Will Suffer Irreparable Harm if the Court Grants Plaintiffs' Motion

Even if the Court finds there is jurisdiction, the Court should not grant Plaintiffs' motion for a preliminary injunction because the Department will suffer irreparable harm.  Since the Court entered the preliminary injunction order on May 6, 2025, Plaintiffs have submitted over $250 million in liquidation requests.  Ryder Decl. Ex. A.  This reflects a much larger amount than requests that were made by previously.  *Id.* ¶¶ 4-5.  The largest single drawdown request submitted in the weeks before March 28, 2025 was approximately $13 million.  *Id.* ¶ 5.  Since May 6, 2025, however, Maryland, Massachusetts, and Michigan together have requested over $120 million.  *Id.* Ex. A.  As noted in the May 11 Letter, these requests are "unprecedented."  May 11 Ltr. 2.  Moreover, if the Department is compelled to pay funds pursuant to the pre-March 28 procedures but ultimately prevails in the litigation, it will be onerous to recover disbursed funds from the States.  Ryder Decl. ¶ 7.  The funds are disbursed to state and local educational authorities, which would make recovery particularly difficult.  *Id.*

In contrast, Plaintiffs have failed to show irreparable harm, which is the "single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted).  "Irreparable harm is injury that is neither remote nor speculative[.]"  *New York v. DHS*, 969 F.3d 42, 86 (2d Cir. 2020).  Such injuries "cannot be remedied if a court waits until the end of trial to resolve the harm."  *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted).  Accordingly, "[o]nly when the threatened harm would impair the court's ability to grant

16

an effective remedy is there really a need for preliminary relief." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (quotation marks omitted).

Here, the States have not shown that they will suffer irreparable harm. The money that the States claim should be "promptly" awarded to them is still available. In fact, since May 6, the Department has paid out millions of dollars to Plaintiffs. Ryder Decl. Ex. A. In addition, the States may follow the project-specific process provided for in the April 3 and May 11 Letters for the States in order to access ES funding, and in case of any denied project-specific extension request, may appeal that denial. Accordingly, any alleged harm to the States is speculative. *See Grand River Enterprises*, 481 F.3d at 66 (injury must be "neither remote nor speculative"). The funds are still available to States, which may avail themselves of the project-specific process. In contrast, if the Court grants the preliminary injunction, the Department will be compelled to disburse funds that it will be unable to recover, pursuant to a process that it has attempted, through administrative action, to supersede. Ryder Decl. ¶ 7. The Court should therefore deny the preliminary injunction since Plaintiffs have not shown irreparable harm and if the Court grants the motion, the Department will be compelled to pay funds that it will be unable to recover even if it prevails in the litigation.

## III.    A Preliminary Injunction Would Not Serve the Public Interest

The balance of equities and the public interest also weigh in the Department's favor. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunctive relief). "In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the

consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (quotation marks omitted).

Because Plaintiffs cannot establish the other factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009).

Moreover, the May 11 Letter explains that the public interest is better served if the Department implements the project-specific process outlined in the letter and which is being utilized with respect to the non-plaintiff States and outlying areas. *See* May 11 Ltr. The Department is charged with administering these funds and, five years after the start of the pandemic, it has an interest in ensuring that the funds requested by the States are being utilized for their intended purposes. Accordingly, the May 11 Letter directs states seeking to liquidate further grant funds to explain "[w]hether the particular project mitigates the educational effects of COVID and, if so, how." May 11 Ltr. 5. And as explained above, if the Court compels the payment of funds by the Department, it will be nearly impossible to recover those funds if the Department prevails in the litigation. Ryder Decl. ¶ 7. The public interest thus weighs in favor of denying Plaintiffs' motion for preliminary relief.

**IV. Plaintiffs Do Not Demonstrate a Likelihood of Success on the Merits**

Finally, Plaintiffs have not demonstrated a likelihood of success on the merits of their APA claims as those claims relate to the Department's May 11 Letter.

To begin, the May 11 Letter (like the March 28 and April 3 letters) does not constitute final agency action. The APA limits review to "final agency action[s]," and expressly excludes review of "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704; *accord*

18

*Dalton v. Specter,* 511 U.S. 462, 469 (1994).  This finality requirement seeks to avoid "piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242 (1980).  And agency action is final only when it (1) "'mark[s] the consummation of the agency's decisionmaking process'" and (2) is "'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

By its terms, the May 11 Letter's "determination is merely that the extreme, broad-based liquidation extensions previously granted are inappropriate."  May 11 Ltr. 4.  But it "recognizes that, in certain instances, ESF funds may still positively contribute to providing direct academic services to students for combatting learning loss or other lasting harms inflicted by the pandemic." *Id.*  Accordingly, it outlines the process for seeking project-specific extensions. *Id.* 6-7. In other words, the letter does not determine whether any particular project's liquidation deadline may be extended.  Indeed, the Department has granted, and continues to grant, project-specific extensions for non-plaintiff states.  Ryder Decl. ¶ 9.  Moreover, where those extension requests have been denied, states have availed themselves of the Department's administrative appeal procedure. *Id.* In light of that demonstrated viability of the project-specific extension process, and given the "flexible" and "pragmatic" nature of the finality inquiry, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), the Court should reconsider its prior determination that recission of the prior extensions in favor of a case-by-case review process constitutes reviewable final action under the APA, Tr. at 44.

Even if the May 11 Letter does constitute reviewable final agency action, the Department's actions are not "arbitrary and capricious."  *See* 5 U.S.C. § 706(2)(A).  Judicial review under the

APA "is narrow and deferential," *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (citations and quotation marks omitted), and the reviewing court may not "substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Agency action may be set aside as arbitrary and capricious only where "'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *NRDC v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The May 11 Letter's explanation of the Department's reasoning survives APA review. To begin, that reasoning is grounded is grounded in the Department's authority to grant extensions where it determines they are "justified." 2 C.F.R. § 200.344(c); *see also* May 11 Ltr. 3. The May 11 Letter adequately explains why, in its exercise of that discretion and subject to a 14-day notice period, it determined to rescind the prior extensions. *See FDA v. Wages & White Lion Investments, L.L.C.*, 145 S. Ct. 898, 917 (2025) ("[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change, display awareness that [they are] changing position, and consider serious reliance interests" (quotation marks omitted; alterations in original)).

Plaintiffs' arguments to the contrary, *see* Pls.' Br. 10-15, are unavailing. To begin, the May 11 Letter does not justify the Department's change in position merely on the basis that the pandemic health emergency has ended. *Contra* Pls.' Br. 10. Rather, the letter explains that the relevant appropriations statutes "generally require ESF funds to be used to prepare, prevent, and respond to coronavirus," but that "[i]n the time since the pandemic ended, States have increasingly tapped ESF funds in ways that are less and less connected to direct academic services to students

and the ongoing educational harms caused by COVID." May 11 Ltr. 3. The Department's plan to consider extensions on a project-specific basis is therefore meant to ensure that ongoing projects are consistent with the objectives of the appropriations statutes. That certain projects identified by the May 11 Letter might arguably be permitted under those statutes, *see* Pls.' Br. 10-11, does not render case-by-case review of requests for extensions of the liquidation period arbitrary and capricious. Similarly, Plaintiffs' arguments concerning the limited timeframe covered by the NAEP scores referenced in the May 11 Letter, *see* Pls.' Br. 12, do not render the Department's determination unreasonable: those scores postdate the relevant appropriations acts and the expenditure of grant funds under the ESF programs, *see* May 11 Ltr. 3-4, and it is not unreasonable for the Department to cite them in explaining why project-specific consideration of liquidation extensions.

The Department also adequately explained its basis for taking a second look at the prior extension approvals. *Contra* Pls.' Br. 13-14. To begin, Defendants did not concede at oral argument that there was no basis for questioning those approvals, only that there was "no reason to believe" based on the record, and taking the allegations in the Complaint as true, that the Department had not undertaken a "careful review" of the States' prior extension requests. Tr. at 27. In the May 11 Letter, however, the Department explains that "the original extension letters included no explanation for the extensions, and the Department has serious questions about the verification process that resulted in the approval of effectively blanket extensions." May 11 Ltr. 4. Nor does the May 11 Letter fail to provide a rationale for its characterization of the prior extensions as "extreme." *Contra* Pls.' Br. 14. To the contrary, it explains that "the Department had never previously offered such a broad-based opportunity to all States to liquidate funds in a grant program years after the original obligation period set by Congress," May 11 Ltr. 3, and notes

that the extension for the ARP Act "was more than three times the length of the default period," *id.* 4.

The Department also reasonably grounded the exercise of its discretion in the recent pace of the States' draw-down requests. *Contra* Pls.' Br. 14-15; *see* Ryder Decl. ¶¶ 3-6 & Ex. A.  Nor does the May 11 Letter ignore any reliance interests, *contra* Pls.' Br. 15-16, which the May 11 Letter addressed both by providing a "14-day period . . . to seek reimbursement for authorized costs," May 11 Ltr. 5, and a process for seeking individualized extensions, *id.* 6-7.  Effectively, under Plaintiffs' view of their reliance interests, the Department would never be able to modify the prior blanket extensions of the liquidation period.  That is inconsistent with the discretion provided to the Department by regulation.

Lastly, Plaintiffs have not established a likelihood of success on their claim that the May 11 Letter is contrary to law.  Pls.' Br. 16.  The relevant statutes provided a deadline for obligation of these appropriations: September 30, 2024.  ARP § 2001(a); 20 U.S.C. § 1226a.  And the applicable regulation provided an additional 120 days to liquidate all financial obligations and gave the Department discretion to extend that deadline "[w]here justified." 2 C.F.R. § 200.344(c). Moreover, the May 11 Letter continues to permit states to seek further extensions on a project-specific basis.  May 11 Ltr. 6-7.  Even acknowledging the Court's observation, at oral argument, that "Congress intended that these funds remain  available," Tr. at 45, there is nothing in the statutes Congress passed that precludes the Department from rescinding a prior extension and evaluating further extension requests on a project-specific basis.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.[1]

Dated:  New York, New York         Respectfully submitted,
        May 29, 2025


                                   JAY CLAYTON
                                   United States Attorney

                                   By: */s/  Dana Walsh Kumar*
                                   CHRISTOPHER K. CONNOLLY
                                   DANA WALSH KUMAR
                                   Assistant United States Attorneys
                                   86 Chambers Street, 3rd Floor
                                   New York, NY 10007
                                   Telephone: (212) 637-2761/2741
                                   Email: christopher.connolly@usdoj.gov
                                          dana.walsh.kumar@usdoj.gov

---

[1] In accordance with Fed. R. Civ. P. 65(c) and the President's March 11, 2025, memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," if the Court enters a preliminary injunction, the government respectfully requests that the Court require Plaintiffs to post a bond of $10,000.  *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); www.whitehouse.gov/presidential[1]actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/.   The government further requests that, if a preliminary injunction is entered, the Court enter a stay of this action pending the disposition of any appeal authorized by the Solicitor General.

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,113 words.