**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK, *et al*.,

Plaintiffs,

v.

U.S. DEPARTMENT OF EDUCATION, *et al*.,

Defendants.

Case No. 1:25-cv-02990 (ER)(BCM)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. AS DEFENDANTS PREVIOUSLY CONCLUDED, THIS COURT HAS JURISDICTION OVER THE STATES' CLAIMS .......... 2

II. THE COURT'S PRIOR RULINGS ARE LAW OF THE CASE .......... 5

III. DEFENDANTS' JUSTIFICATIONS ARE NOT REASONABLE .......... 8

IV. THE COURT SHOULD COMPEL DEFENDANTS TO PROCESS PAYMENT REQUESTS WITHOUT DELAY TO ENSURE COMPLIANCE WITH THE COURT'S PRELIMINARY INJUNCTIONS .......... 10

V. GIVEN DEFENDANTS' ACTIONS IN THIS CASE AND POSSIBLE CHANGE IN THE LAW, THE COURT SHOULD ORDER A NOMINAL BOND .......... 11

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)........................................................................................ 3-5

*Cmty. Legal Servs. in East Palo Alto v. United States Dep't of Health and Human Servs.*,
No. 25-2808, 2025 WL 1393876 (9th Cir. May 14, 2025).................................................. 4-5

*Dep't of Educ. v. California*,
604 U.S. ___, 2025 WL 1008354 (April 4, 2025) ............................................................ 4-5

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1994).......................................................................................6

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002).....................................................................................5

**Federal Regulations**

2 C.F.R.
§ 200.344.......................................................................................................5, 8

**Rules**

Local Civ. R. 6.3 ................................................................................................6

Fed. R. Civ. P. 65 ...............................................................................................11

## INTRODUCTION[1]

As a threshold matter, the Court has jurisdiction over Plaintiffs' purely equitable claims. In opposing Plaintiffs' first PI motion, Defendants plainly concluded that the Tucker Act is inapplicable because Plaintiffs do not assert a claim for money damages and thus Defendants did not contest this Court's jurisdiction. Having lost on the merits on the first motion, Defendants now assert the opposite position and suddenly challenge the Court's jurisdiction. But Defendants were correct the first time. And their new position on the Tucker Act is not justified by Plaintiffs' request that the Court order ED to "process" ES funding requests without delay. Their contention that "process" means the same as "pay" is nonsensical.

On the merits, the Court should reject most of Defendants' arguments under the law of the case doctrine. The May 11 Rescission Letter is a final agency action under the APA for the same reasons that the Court held the March 28 Rescission Letter was a final agency action. The Court has already held that rescinding ED's prior extension approvals will cause Plaintiffs irreparable harm. Defendants' pandemic-is-over justification for ED's abrupt change in position on the extension approvals is just as unreasonable now as the Court held it to be on the first PI motion. And as the Court held before, Defendants fail to account for Plaintiffs' reliance on ED's prior extension approvals; they simply declare such reliance to be invalid. Finally, Defendants' second attempt to terminate Plaintiffs' liquidation periods is contrary to law for the same reasons that the Court previously held the March 28 rescission was contrary to law.

---

[1] The defined terms used in this reply are the same as those used in Plaintiffs' opening brief (ECF No. 85) ("Opening Br.").

Defendants' second attempt to rescind ED's prior extension approvals is not saved by the additional "justifications" included in the May 11 Rescission Letter. None provides a reasoned explanation for ED's abrupt change in position, nor do they matter in any event since the rescission is still contrary to law in violation of the APA regardless of any purported justification Defendants offer. Accordingly, Plaintiffs have again established a high likelihood of success on the merits of their APA claims.

Finally, in addition to enjoining Defendants from enforcing the May 11 Rescission Letter, the Court should direct ED to process Plaintiffs' ES funding requests "without delay" and to report to the Court on when all current outstanding requests will be processed. This directive is necessary to prevent ED from thwarting the Court's injunction by burdening Plaintiffs' SEAs with boilerplate demands for additional information that effectively seek to revisit the bases for ED's prior extension approvals, as ED has been doing since the Court issued its May 6 preliminary injunction order ("May 6 Order").

## ARGUMENT

### I. AS DEFENDANTS PREVIOUSLY CONCLUDED, THIS COURT HAS JURISDICTION OVER THE STATES' CLAIMS

In response to Plaintiffs' first PI motion, Defendants concluded that the Tucker Act does not apply because Plaintiffs do not seek money damages—despite Plaintiffs anticipating in their opening brief that Defendants might rely on the Tucker Act as a defense, *see* ECF No. 11 at Point I.A. Defendants' conclusion is clearly correct; this case, at its core, is about Plaintiffs' need to enjoin Defendants' unlawful termination of their liquidation periods, but for which Plaintiffs would not require relief from this Court of *any* kind. Thus, Defendants' brief opposing Plaintiffs' first PI motion never once mentioned the Tucker Act or suggested that the Court lacks jurisdiction over Plaintiffs' claims. *See* ECF No. 63.

Having lost that motion on the merits, Defendants now trot out the Tucker Act, employing sophistry to try to explain why the Tucker Act applies now but did not before; they assert that Plaintiffs have changed the nature of the relief they seek by including in their proposed PI Order a request that the Court order ED to "pay money to the States under the grants." Opp. at 9. Not true. Plaintiffs seek preliminary relief directing ED merely to "process" Plaintiffs' liquidation requests without delay, not "pay" them. ECF No. 87. The words "pay" and "process" mean different things, and an order directing ED to "process" requests *may or may not* result in payment, depending on whether the requests meet the requirements for payment under ED's ministerial review criteria applicable to timely payment requests. Indeed, Defendants recognize this distinction between "pay" and "process," arguing the Court should not "direct the Department to make specific *payments* because the Department is continuing to review submissions" and should be allowed "to continue that *process*." Opp. at 15 (emphasis added). The core relief Plaintiffs seek here remains enjoining implementation of that unlawful action.

Because Plaintiffs' claims, including the request for an order directing ED merely to "process" ES funding requests without delay, are *not* for money damages, this case fits squarely within the general rule that district courts have jurisdiction over challenges to final agency action under §702 of the APA, including when a remedial order may result in the disbursement of funds, as Defendants correctly concluded when opposing Plaintiffs' first PI motion. *See Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988).

Defendants also assert that seeking "to enjoin the Department from implementing the directives in the May 11 letter" "amount[s] to [a] claim[] for the payment of money, purportedly pursuant to grant agreements." Opp. at 11. Their position directly conflicts with their prior correct conclusion on Plaintiffs' first PI motion that seeking to enjoin ED from implementing the

directives in the March 28 Rescission Letter was *not* a claim for the payment of money triggering the Tucker Act. Both letters rescind ED's prior extension approvals and terminate Plaintiffs' liquidation periods. For the reasons articulated in Plaintiffs' brief in support of their first PI motion, and as Defendants have already implicitly conceded by omitting any Tucker Act argument in their opposition, such relief is *not* a claim for money damages that would fall within the scope of the Tucker Act under *Bowen*. ECF No. 11 (Point I.A.). Rather, it is a claim "to hold unlawful and set aside agency action," which this Court, as the "reviewing court," has "jurisdiction under §702 [of the APA] to review" to grant Plaintiffs "the complete relief authorized by §706 [of the APA]." *Bowen*, 487 U.S. at 911.

Defendants' newly minted effort to distinguish *Bowen*, Opp. at 13-14*,* is also without merit. As in *Bowen*, this case involves a decision by an agency head that categorically rescinds a previous agency determination across an entire grant program. Such a decision "represents an ongoing policy that has significant prospective effect," *see Bowen*, 487 U.S. at 889 (cleaned up), and "reviewing the Secretary's interpretation of federal law" in that context is precisely the task that *Bowen* deemed appropriate for APA review. *Id.* at 909–10.

Defendants' reliance on the Supreme Court's motion order granting a stay in *Dep't of Educ. v. California*, 604 U.S. ___, 2025 WL 1008354 (April 4, 2025), is unavailing. Opp. at 11-12. That order—which pre-dated Defendants' opposition to the first PI motion by nearly 3 weeks—was issued "with barebones briefing, no argument, and scarce time for reflection," 2025 WL 1008354 at *2 (Kagan, dissenting), and did not overrule *Bowen*; indeed, the majority cites to *Bowen* as controlling law, *id*. at *1 (per curiam).

Here, *Bowen* controls because the "rights and remedies are statutorily or constitutionally based" rather than "contractually based." *Cmty. Legal Servs. in East Palo Alto v. United States*

*Dep't of Health and Human Servs.*, No. 25-2808, 2025 WL 1393876, at *2 (9th Cir. May 14, 2025) (cleaned up). As Defendants acknowledge, the rights and remedies at issue are statutorily based on ED's congressional mandate under CRRSA and ARP, and regulatory authority under 2 C.F.R. §200.344(c), with Defendants invoking ED's inherent authority under the regulatory framework to reconsider the prior extension approvals. *See* ECF No. 1-1, at 1 & n.1 (citing *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014)). This case is thus an administrative law case, not a contract case, and does not turn on the particular terms and conditions of ED's grant awards. *See East Palo Alto*, 2025 WL 1393876, at *2 (holding Tucker Act inapplicable where "plaintiffs seek to enforce compliance with statutes and regulations, not any government contract").

Furthermore, unlike in *California*, Defendants' actions prevent Plaintiffs from submitting timely payment requests for awarded ES funds, requiring them to cut programs and lay off staff because they do *not* have the "financial wherewithal" to keep these programs running or all of their employees on the payroll.[2] *California*, 2025 WL 1008354, at *1. As the Court held in *Bowen*, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893.

## II. THE COURT'S PRIOR RULINGS ARE LAW OF THE CASE

Defendants all but ignore the Court's May 6 rulings and fail to present any "cogent" or "compelling" reason why the Court should depart from those prior rulings that are now law of the case. *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002). As discussed below, the

---

[2] *See,* Coughlin-NY ¶¶50-57, 52, 59; Slaga-AZ ¶¶19-28; Wright-MD ¶¶10 & 12; Perkins-Cohen-MD ¶¶12–15; Rice-MI ¶¶22-25; Seaton-IL ¶¶18, 25; Stewart-DC ¶11; Chasse Johndro-ME ¶36; Rowe-PA ¶30; Wetherell-OR ¶25; Ehling-NJ ¶20; Marten-DE ¶13.

Court's prior rulings defeat most of Defendants' arguments under the law of the case doctrine without the need for further analysis.

**Final Agency Action**. Defendants argue that the rescission is not final agency action subject to review under the APA because it provides a "process for seeking project-specific extension" and therefore "does not determine whether any particular project's liquidation deadline may be extended." Opp. at 19. The Court rejected this same argument on the first PI motion, holding that the rescission was "final" agency action despite the "new process that has been set up for these funds." *Id*. at 44:10-17.[3]

**Irreparable Harm**. Defendants argue "Plaintiffs have failed to show irreparable harm" because "the States may follow the project-specific process" subject to the right of an appeal. Opp. at 16-17. This is the same argument they raised before, contending that "the ability to obtain a further extension of the liquidation period" through the project specific extension process prevents the harm "from being irreparable." Tr. at 34:17-25:15. The Court rejected this argument, holding that absent an injunction preventing Defendants from terminating Plaintiffs' liquidation periods, "[P]laintiffs have established irreparable harm" based on "any number of declarations that have been submitted that talk about the disruption that has been caused by" ED's change in position, Tr. 45:15-21, 46:6-7.

---

[3] In a single sentence, Defendants ask the Court to "reconsider" its prior ruling on finality, Opp. at 19, but this request is both procedurally improper and substantively without merit. Reconsideration must be requested by a formal motion filed within 14 days of entry of the order being challenged. Local Civ. R. 6.3. And Defendants have not satisfied the "strict" test for reconsideration, which requires the moving party to "point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp.*, *Inc.*, 70 F.3d 255, 257 (2d Cir. 1994). Defendants do neither. instead, they simply point to the "the project-specific extension process" the Court already considered. Opp. at 19.

**Equities/Public Interest**. Defendants maintain that the balance of equities and public interest weigh in their favor because through the project-specific extension process ED is seeking to ensure "that the funds requested by the States are being utilized for their intended purposes." Opp. at 18. The Court rejected this argument, holding that "the public interest and the balance of hardships here weigh clearly in favor of the [P]laintiffs" because their SEAs "have had to disrupt the provision of educational services to schoolchildren" and "have had to halt infrastructure projects midstream because of the Department of Education's determination," Tr. at 46:6–11.

**Pandemic Is Over**. In the May 11 Rescission Letter, Defendants argue that Plaintiffs' liquidation periods should be terminated as of May 25, 2025, because the pandemic "concluded more than two years ago." May 11 Rescission Letter at 2. Defendants offered this same justification in the March 28 Rescission Letter, but the Court held it "was not a reasonable explanation" because the ES funds were intended to support "programs going forward after the pandemic emergency was deemed to have ended" to mitigate the "loss of educational attainment that schoolchildren had suffered as a result of remote learning and other difficulties attendant to the COVID-19 pandemic." Tr. at 44:21-45:17.

**Contrary to Law**. Defendants argue the May 11 Rescission Letter is not contrary to law because "there is nothing in the statutes Congress passed that precludes [ED] from rescinding a prior extension and evaluating further extension requests on a project-specific basis." Opp. at 22. The Court previously rejected this argument, holding that Plaintiffs were likely to succeed in proving Defendants had acted contrary to law in rescinding ED's prior extension approvals because "Congress intended that [the ES] funds remain available" and that ED "be liberal and flexible in making sure that these programs continued to be funded" and "not impose unreasonable obstacles in the way of state agencies looking to continue to fund those programs." Tr. at 45:9-14.

**Defendants' Harm**. Defendants argue they "will suffer irreparable harm" if the Court issues the requested PI because ED "will be compelled to disburse funds that it will be unable to recover" through a process it has "attempted . . . to supersede." Opp. at 16-17. The Court rejected this argument on the first PI motion, finding there was no evidence in the record "suggest[ing] the government would be irreparably harmed" by disbursing "funds that have been appropriated for particular uses" by Congress. Tr. at 45:22-25.

* * *

But even if the Court did not apply law of the case and were to revisit these rulings, the operative facts and law have not changed and therefore the results should be the same. The reasoning employed by the Court on Plaintiffs' first PI motion applies with equal force on this motion. *See* Tr. at 43:25-46:15.

## III. DEFENDANTS' JUSTIFICATIONS ARE NOT REASONABLE

Defendants fail to establish in their opposition that any of the remaining justifications listed in the May 11 Rescission Letter are reasonable.

First, Defendants contend that it is reasonable to rescind ED's prior extension approvals, terminate Plaintiffs' liquidation periods, and require Plaintiffs to utilize the new project-specific process "to ensure that ongoing projects are consistent with the objectives of the appropriations statutes." Opp. at 21. But this is not a reasonable basis to rescind extensions that ED previously approved under 2 C.F.R. §200.344 because that regulation authorizes ED to extend liquidation periods based on whether grant recipients demonstrate additional time is needed to implement projects already approved when the grants were awarded, not to revisit the objectives or prior approvals of those projects. And Defendants concede that the projects which the May 11 Rescission Letter contends "Congress did not intend" to fund (ECF No. 84-1 at 2) "might arguably be permitted under" ARP. Opp. at 21. It is patently unreasonable for ED to justify rescinding the

prior extension approvals to impose on Plaintiffs a new project-specific extension process to reject projects Congress intended ES funds to support.

Second, Defendants fail to explain how the NAEP scores provide a reasonable justification for rescinding ED's prior approvals. As a matter of common sense, tests administered in the first quarter of 2024 do not shed any light on the efficacy of programs designed under contracts entered into between April and September of 2024 and started in the 2024-2025 academic year. And logically, test scores suggesting students are continuing to struggle to catch up cannot possibly justify *cutting* projects that provide additional instruction time.

Third, Defendants unconvincingly attempt to walk back their admission during argument on May 6 that there was "no reason to believe" ED failed to conduct a careful review when approving the prior extension requests, Tr. at 27:7-10, suggesting this statement was somehow qualified because it was "based on the record," Opp. at 21. But the evidence Defendants rely on to support the assertion in the May 11 Rescission Letter that ED's prior review was not careful are the "original extension letters" they contend "included no explanation for the extensions." May 11 Rescission Letter at 4. That is the same evidence that was in the record when Defendants, through their counsel, represented to the Court there was "no reason to believe" ED failed to conduct a careful review. *See, e.g.*, Pierson Decl.-CA, Ex. A (ECF No. 14-1); Marten Decl.-DE, Ex. 1 (ECF No. 16-1); Couglin Decl.-NY, Ex. A (ECF No. 26-1). If the approval letters provided no reason for Defendants to believe on May 6 that ED's review was not careful, they similarly provide no reason to believe otherwise today.[4]

---

[4] Defendants' suggestion that the extensions were not the product of a careful review because they were "extreme" falls flat. Opp. at 21. Defendants cannot dispute that the 14-month extensions fit within the guidelines for extension applications on the ED website. ECF No. 85 at 14 n.7.

Fourth, Defendants disingenuously point to "the recent pace of the States' draw-down requests" received since May 6 as justifying the termination of Plaintiffs' liquidation periods. Opp. at 22. Defendants ignore the obvious explanation for the uptick: the backlog of payment requests that piled up between ED's termination of Plaintiffs' liquidation periods on March 28 and the Court's PI Order restoring the liquidation periods on May 6.

## IV. THE COURT SHOULD COMPEL DEFENDANTS TO PROCESS PAYMENT REQUESTS WITHOUT DELAY TO ENSURE COMPLIANCE WITH THE COURT'S PRELIMINARY INJUNCTIONS

As Plaintiffs demonstrated in their opening brief, Defendants have largely ignored this Court's May 6 Order. *See* Opening Br. at 18–19. For example, the New York State Education Department submitted a drawdown request for approximately $11.5 million on March 28, 2025, prior to the retroactive deadline imposed by the March 28 Rescission Letter. ECF No. 89-1. ED did not respond to that drawdown request until May 13, 2025—a week after the Court issued its May 6 Order—and then only to request additional information. *Id.*; *see also* ECF No. 89 at ¶ 5.

Other of Plaintiffs' SEAs have experienced similar delays:

- On May 7, 2025, the California Department of Education ("CDE") submitted a drawdown request for approximately $3.8 million. On May 16, 2025, ED requested additional documentation, which CDE promptly supplied the same day. On May 20, 2025, ED requested invoices again. Thompson Reply Aff. Ex. A.
- On May 22, 2025, the Minnesota Department of Education submitted a drawdown request for approximately $225,000 but has yet to receive any response from ED other than an automatic email stating that the email will be processed in the order in which it was received. Thompson Reply Aff. Ex. B.
- On May 8, 2025, the D.C. Office of the State Superintendent of Education submitted a drawdown request for approximately $14.8 million, and a week later received a response from ED that additional documentation was required. Thompson Reply Aff. Ex. C.

Defendants' own declarant demonstrates clearly how slowly Defendants have been moving in response to Plaintiffs' drawdown requests: of the approximately $428 million in drawdown

requests ED reports to have received since May 6, it has only processed approximately $16.7 million, or about 4%. ECF No. 101-1. And Defendants do not even include requests, like New York's, that have been pending since prior to the March 28 termination. Accordingly, Plaintiffs request that the Court direct Defendants to process Plaintiffs' drawdown requests without delay.

## V. GIVEN DEFENDANTS' ACTIONS IN THIS CASE AND POSSIBLE CHANGE IN THE LAW, THE COURT SHOULD ORDER A NOMINAL BOND

Defendants have largely ignored this Court's rulings and the May 6 Order, and given that conduct and a potential legislative change targeting Rule 65 injunctions, Plaintiffs seek a nominal bond in order to ensure the Court will be able to compel compliance by Defendants in the future. On May 22, 2025, the House of Representatives passed H.R. 1, the 2025 budget reconciliation bill. Tucked into Title VII of the bill is a provision that, if enacted into law, would retroactively bar federal courts from enforcing through contempt a party's failure to comply with a preliminary injunction or temporary restraining order "if no security was given when the injunction or order was issued." H.R. 1 §70302.[5] A bond is inappropriate under current law, but given Defendants' past conduct, Plaintiffs ask that the Court enter a nominal bond of $1,000 in an abundance of caution. Plaintiffs' revised proposed preliminary injunction order reflecting this change is attached as Exhibit 1 to this reply.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter their Revised Proposed Preliminary Injunction Order, along with granting such other relief as the Court deems necessary and appropriate to maintain the status quo pending resolution of this action.

---

[5] Available at https://www.congress.gov/bill/119th-congress/house-bill/1/text.

Dated: New York, New York
June 2, 2025

Respectfully submitted,

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By: /s Andrew Amer
Andrew Amer
*Special Counsel*
Molly Thomas-Jensen
*Special Counsel*
Rabia Muqaddam
*Special Counsel for Federal Initiatives*
Stephen C. Thompson
*Special Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*

**ROB BONTA**
ATTORNEY GENERAL OF CALIFORNIA

By: /s/ Maureen C. Onyeagbako
Maureen C. Onyeagbako*
*Supervising Deputy Attorney General*
José Pablo Galán de la Cruz*
*Deputy Attorney General*
Cheryl L. Feiner**
*Senior Assistant Attorney General*
California Attorney General's Office
1300 I Street, Ste. 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7324
Email: Maureen.Onyeagbako@doj.ca.gov
Pablo.Galan@doj.ca.gov
Cheryl.Feiner@doj.ca.gov

*Counsel for Plaintiff State of California*

**KRISTIN K. MAYES**
ATTORNEY GENERAL OF ARIZONA

By: /s/ Alexa Salas
Alexa Salas*
*Assistant Attorney General*
Lauren Watford*
*Assistant Attorney General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Alexa.Salas@azag.gov
Lauren.Watford@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

**KATHLEEN JENNINGS**
ATTORNEY GENERAL OF THE STATE OF DELAWARE

By: /s/ Vanessa L. Kassab
Ian Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**BRIAN L. SCHWALB**
ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA

By: */s/ Andrew Mendrala*
Andrew Mendrala*
*Assistant Attorney General*
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

*Counsel for the District of Columbia*

**AARON M. FREY**
ATTORNEY GENERAL FOR THE STATE OF MAINE

By: */s/ Sarah A. Forster*
Sarah A. Forster*
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145
Sarah.Forster@maine.gov

*Counsel for the State of Maine*

**ANNE E. LOPEZ**
ATTORNEY GENERAL FOR THE STATE OF HAWAIʻI

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
*Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**KWAME RAOUL**
ATTORNEY GENERAL FOR THE STATE OF ILLINOIS

By: */s/ Elena S. Meth*
Cara Hendrickson*
*Assistant Chief Deputy Attorney General*
Elena S. Meth*
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(773) 835-0182
Cara.Hendrickson@ilag.gov
Elena.Meth@ilag.gov

*Counsel for the State of Illinois*

**ANTHONY G. BROWN**
ATTORNEY GENERAL FOR THE STATE OF MARYLAND

By: /s/ Keith M. Jamieson
Elliott Schoen*
*Principal Counsel*
*Assistant Attorney General*
Alan J. Dunklow*
*Deputy Principal Counsel*
*Assistant Attorney General*
Maryland State Department of Education
Keith M. Jamieson*
*Assistant Attorney General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6960
kjamieson@oag.state.md.us

*Counsel for the State of Maryland*

**DANA NESSEL**
ATTORNEY GENERAL OF MICHIGAN

By: /s/ Neil Giovanatti
Neil Giovanatti
BreAnna Listermann*
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
ListermannB@michigan.gov

*Counsel for the People of the State of Michigan*

**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz**
*State Solicitor*
Katherine Dirks
*Chief State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2427
david.kravitz@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**KEITH ELLISON**
ATTORNEY GENERAL FOR THE STATE OF MINNESOTA
By: /s/ Liz Kramer
Liz Kramer*
*Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA

By: /s/ Heidi Parry Stern
Heidi Parry Stern (Bar. No. 8873)
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**MATTHEW J. PLATKIN**
ATTORNEY GENERAL OF NEW JERSEY

*/s/ Lauren E. Van Driesen*
Lauren E. Van Driesen
Jessica L. Palmer
Justine Longa**
*Deputy Attorneys General*
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Lauren.VanDriesen@law.njoag.gov
Jessica.Palmer@law.njoag.gov
Justine.Longa@law.njoag.gov

*Counsel for the State of New Jersey*

**DAN RAYFIELD**
ATTORNEY GENERAL FOR THE STATE OF OREGON

By: */s/ Sara Van Loh*
Sara Van Loh OSB #044398*
*Senior Assistant Attorney General*
100 SW Market Street
Portland, Oregon 97201
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov

*Attorneys for the State of Oregon*

**RAÚL TORREZ**
ATTORNEY GENERAL OF THE STATE OF NEW MEXICO

*/s/ Anjana Samant*
Anjana Samant**
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
asamant@nmdoj.gov
(505) 270-4332

*Counsel for the State of New Mexico*

**JENNIFER C. SELBER**
*General Counsel*
Michael J. Fischer
*Executive Deputy General Counsel*

By:*/s/ Thomas P. Howell*
Thomas P. Howell*
*Deputy General Counsel*
Governor's Office of General Counsel
30 N. 3rd Street, Suite 200
Harrisburg, PA 17101
(717) 460-6786
thowell@pa.gov

*Counsel for Governor Josh Shapiro, Commonwealth of Pennsylvania*

* Admitted Pro Hac Vice
** Pending Pro Hac Vice applications filed/to be filed

**RULE 7.1 CERTIFICATION**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Reply Memorandum of Law contains 3,482 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
June 2, 2025

LETITIA JAMES
Attorney General of the State of New York

By: /s Andrew Amer
Andrew Amer
Special Counsel
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov